## United States Trust Company, Guardian v. Fidelity & Columbia Trust Company, Administrator.

(Decided March 16, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Husband and Wife—Generally, a Gift to Wife is Presumed, where Husband Transfers Property to Her, Expends Money on Her Property, Makes Bank Deposit, or Takes Purchase-Money Note in Her Name.—Generally, a gift from husband to wife will be presumed, where he transfers property to her, expends money in improving her property, deposits money in bank in her name, takes purchase-money note in her name, or pays consideration for a transfer to her.

2. Appeal and Error—That Parties were Permitted to Testify Against Decedent's Estate Contrary to Statute Becomes Unimportant, in View of Competent Evidence Proving Every Material Fact (Civil Code of Practice, Section 606, Subsection —).—In contest between a father and the guardian of his infant child over shares of stock standing in name of the deceased wife, in which the father's father asserted a claim against the decedent's estate, where every material fact was proved by other competent evidence, it was unimportant that the fathers were permitted to testify in their own behalf against the estate, contrary to Civil Code of Practice, section 606, subsection —.

3. Husband and Wife—Evidence Held Not to Show that Money Borrowed by Husband to Pay Wife's Debts was Intended as a Gift to Wife.—Evidence held not to show that money borrowed by husband from his father and used to pay wife's debts was intended as a gift, but that it was a loan to wife, with expectation that it be repaid.

4. Husband and Wife.—Presumption that transfer of money or property by husband to wife is a gift is rebuttable.

5. Executors and Administrators—Father, Having Paid Note Indorsed by Him for Money Borrowed by Son to Pay Loans of Son and Wife,

and Accepting Son as Debtor, was Not Entitled to Recover Amount Thereof from Estate of Son's Wife.—Where decedent's husband, on note indorsed by his father, borrowed money to pay his and decedent's loans to bank, and where the husband's father paid the note on which he was surety, and took the husband's note for full amount thereof, and accepted him as debtor, the father was not entitled to recover amount of his note from estate of the wife.

BOOTH, McDOWELL & CONNER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This is a contest between the father and the guardian of his infant child over 1,118 shares of the common stock of B. F. Avery & Sons, a corporation, standing in the name of Juliette Avery McDonald, deceased wife of Donald McDonald, Jr., and also an assertion of a claim of approximately $44,000.00 of Donald McDonald, Sr., against the estate of Juliette Avery McDonald, and a similar claim by Donald McDonald, Jr., surviving husband of Juliette Avery McDonald, growing out of the following facts: Some time during the years 1920, 1921, 1922, Donald McDonald, Jr., and his wife, Juliette, began to speculate in the common stock of B. F. Avery & Sons, he keeping a separate account and buying independently. On January 18th, 1922, Juliette Avery McDonald, now deceased, owed the Fidelity & Columbia Trust Company the sum of $44,000.00 with interest from January 1st, 1922, which indebtedness was secured by assignments in blank of certificates representing 1,118 shares of common stock of B. F. Avery & Sons. At the same time her husband, Donald McDonald, Jr., owed the Fidelity & Columbia Trust Company the sum of $11,000.00, which was secured by 225 shares of Avery common stock, which was pledged as collateral thereon. On this date, January 18th, 1922, the husband and his father, as surety, executed a four months' note to the National Bank of Kentucky, in the sum of $55,000.00 and the father loaned to the son the additional amount of $1,300.00, both of which amounts, less a discount of $1,109.17, were deposited to the credit of Donald McDonald, Jr., at the National Bank of Kentucky. Donald McDonald, Jr., then drew a check on this account at the National Bank of Kentucky, in the sum of $55,178.75, payable to the order of the Fidelity

& Columbia Trust Company. With that check he paid the indebtedness of his wife, with interest to. date, and his own indebtedness in full, and the notes held by the Fidelity & Columbia Trust Company were stamped "paid" and delivered to him. Immediately thereafter, while at the bank, the husband delivered to his father the cancelled notes, together with the collateral which had been pledged thereon.

On May 18th, 1922, the $55,000.00 note, due at the National Bank of Kentucky, was taken up by the father, whereupon the husband, on the following day, May 19th, 1922, executed his personal note to his father in the sum of $55,000.00 payable September 19th, 1922. No part of this note has been paid, nor any interest thereon.

On May 18th, 1922, the decedent delivered to her husband's father thirty (30) shares of the common capital stock of B. F. Avery & Sons, which she is alleged to have sold him at a prior time, at the price of $80.00 per share, part of which is alleged to have been paid by the check for $1,300.00 above mentioned.

Juliette Avery McDonald was the only child of Mrs. Kate F. Avery, one of the wealthiest residents of Louisville. She was, therefore, an heir apparent to a large fortune; at the time of her death she was the mother of the infant, Juliette Avery McDonald, age five years, and it is this infant whom appellant, United States Trust Company, now represents as guardian in this litigation.

It is the contention of appellant as guardian of the infant that inasmuch as Donald McDonald, Jr., husband of the deceased, paid her note at the bank and caused it to be cancelled and marked "paid," the presumption is that the payment was a gift from the husband to the wife and in support of this we are cited the text in 30 C. J., 702, which says:

"A gift from husband to wife will be presumed where he transfers property to her either directly or through a third person, where he expends money in making improvements on her property, where he makes a bank deposit in her name; where he sells property and takes a purchase money note payable to her; or where he pays the consideration for a transfer to her, as where he purchases real property with his own money and causes the conveyance to be made to the wife. In such instance the law does not imply a promise on the part of the wife to repay

the money expended, or to divide the property purchased.''

The cases of Adams v. Button, 156 Ky. 693, and Stratton v. Wilson, 170 Ky. 61, are relied upon in support of the same principle. We think the general rule stated in the text copied above may be conceded as correct, and that makes it necessary to determine whether the facts of this case bring it within the rule, and this we shall consider later.

Appellant also insists that the judgment should be reversed because Donald McDonald, Sr., and the husband, Donald McDonald, Jr., were permitted to testify in their own behalf against the estate of deceased person in violation of subsection — of section 606 of the Civil Code. In argument it said that a witness cannot testify in favor of a coparty against the estate of a decedent concerning any verbal statement of or any transaction with such decedent where the interests of the coparties are so jointly connected that the testimony of the witness in behalf of his coparty will inure to his own benefit.

As we view the case it is wholly unimportant whether the evidence of either of the McDonalds be considered in the trial of this case since every material fact is fully proven and established by the evidence of other witnesses whose competency was not and cannot be called in question. We find in the record photographic copies, admitted to be correct, of all of the certificates of stock mentioned in the record as well as of the notes, and checks bearing upon the question of who paid the indebtedness of Juliette Avery McDonald and where the payments were made. There is other evidence explaining all the circumstances under which the payments were made. By the bankers it was shown that the husband of Juliette borrowed a sufficient sum of money, $55,000.00, to take up and pay both her indebtedness and his, Donald McDonald, Sr., signing as surety. As soon as this money was placed to McDonald's credit he drew a check on the account payable to the Fidelity & Columbia Trust Company, for $55,000.00 with which he paid off all the notes of Juliette at that institution and also his own notes, with interest upon both. The father and son were at the bank, and when the notes were paid off they, with the collateral consisting of 1,118 shares of common stock of B. F. Avery & Sons in the name of Juliette, and 225 shares of the same stock in the name of her husband,

Donald McDonald, Jr., were passed by the bank to the son and by the son to the father, Donald McDonald, Sr., who, the evidence makes plain, was to hold the notes and the collateral to secure himself against loss on account of his suretyship upon the $55,000.00 note, executed by the son to obtain the money with which to pay off the notes.  One cannot read the evidence of these disinterested witnesses without being forced to the conclusion that the husband had borrowed the money to take up the indebtedness of himself and wife at the bank, entertaining no intention of making a gift of $44,000.00 to his wife and of allowing her to continue the owner of the 1,118 shares of Avery stock free from lien, but on the contrary the reader is impressed with the idea that the son, who was in hard circumstances for ready cash, had induced him father to come to his rescue, sign his note for $55,000.00 and thus enable him to obtain money with which to take up the notes which he and his wife, Juliette, owed at the bank with the express understanding and agreement, concurred in by the wife, that the notes thus taken up together with the collateral attached thereto, should pass to and be held by the father as security against loss on account of his suretyship to his son.  The evidence of the bankers, we think, substantially prove all of the foregoing facts and make the conclusion inevitable that the husband did not intend to make a gift of $44,000.00 to his wife, Juliette.  Although a presumption that a transfer of money or property by the husband to the wife is a gift may arise on facts similar to those before us unexplained, it is rebuttable; indeed, it takes very little evidence of probative value to overcome such presumption.  Where it is shown that the husband is pressed for money and that the wife is embarrassed for ready cash; that both have separate obligations at a bank which are pressing them for immediate settlement; that the wife has splendid prospects of soon becoming, through inheritance, the owner of a large estate; that the husband and wife carry separate bank accounts and carry on their dealings in stock under separate accounts; that the husband as agent for the wife has been seeking to borrow money for himself and wife with which to liquidate his own indebtedness as well as that of his wife, the presumption cannot rise that the money borrowed by the husband under such circumstances and used in paying her debts was intended as a gift by the husband to the wife but must be considered and held to be a loan

or advancement of money to relieve her of pressing necessities with the hope and expectation that it will be repaid by the wife to the husband.

The claim of Donald McDonald, Sr., against the estate of Juliette was denied by the chancellor and we think properly so because he had not provided her with money, but had loaned his credit to his son, only; and when the son failed to pay the note at the bank upon which the father was surety the father took the note up and the son executed to the father his promissory note for the full amount of the note which the father has assumed at the bank. The father, therefore, accepted his son as debtor and did not look to Juliette or to her estate for payment. He was not, therefore, entitled to recover the amount of his claim against the estate of Juliette. The son and husband, however, were in a different situation. He had paid the debt of the wife and had received her notes and collateral thereto attached at the bank. If he had not, as we have seen, made a gift of $44,000.00 to his wife Juliette, but on the other hand had merely provided money with which to pay her debt at the bank with the expectation that she would return the money to him, he was entitled to recover of the estate the amount thus paid and to subject the collateral to the satisfaction of this obligation. The chancellor having arrived at this conclusion his judgment must be affirmed.

Judgment affirmed.