## Escott et al. v. Harley et al.

October 19, 1948.

S. J. Stallings and Kenneth J. Newman for appellants.

Alex Berman for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Oscar D. Harley and those asserted to be his foster parents, Lurtie and John J. Harley, all present appellees, filed suit under declaratory judgment law against Margaret Escott and others, who are asserted to be Oscar's aunts, uncles or cousins, all present appellants, seeking to have Oscar declared the son and only heir of one Mary M. Petty, now deceased. The chancellor having rendered judgment in favor of Oscar, the appellants, standing in the position of collateral kindred of the decedent, thereupon prosecuted this appeal for a reversal.

Two grounds of reversal are set up, viz., (A) incompetent evidence was introduced on the trial and (B) insufficient evidence was produced to support the judgment.

Oscar's side gave evidence tending to show that the decedent, who was formerly Mary M. Burnett, gave him birth on February 5, 1906, at Harleys' home in Louisville; that he, somewhat subnormal in mind and body, then took the Harley name, grew up in the Harley home, and received treatment and recognition as the Harleys' son until after Mary's intestate death in 1945, when her property was left for distribution to her kindred, whom

the public thought were entirely collateral; that Mary and Mrs. Harley were sisters; that Mary, at the age of seventeen and in the distress of unwed expectancy, came to Mrs. Harley, who sheltered her through travail and then agreed to take full responsibility for her child; that the attending physician long since went the way of all flesh; that Mary's ignominy, although well shielded from the general public, was nevertheless well known among the members of the Burnett family, including these appellants and the Harleys. Oscar's theory was firmly supported by two of the Burnett children themselves, viz., Mrs. Harley and Edward Burnett, the latter now being a Louisville policeman and one of the named appellants.

Oscar's opponents, the appellants, gave evidence tending to show that Mrs. Harley had either formally or informally adopted Oscar, a child of unexplained parentage, at some time in the State of Indiana; that Mary had never given birth to any child; that Mrs. Harley had somewhat recently executed a notarized form showing that Mary was survived by no child; that Mrs. Harley and Ed Burnett had become disgruntled over disposition of Mary's estate and had accordingly trumped up the entire tale about Oscar's maternal origin. Appellants' theory was likewise firmly supported by two of the Burnett children, viz., Mrs. Escott and Nathan Burnett.

Some disinterested witnesses testified on each side of this case and in support of each of these two theories.

Also, some documentary evidence was produced in support of each theory. Among these documents, we note (1) a blood test of Oscar and the Harleys, showing scientifically that Oscar can not possibly be a son of the Harleys and (2) some photographs indicating a rather strong family resemblance between Oscar and the Burnetts in general and between Oscar and the deceased Mary in particular.

We regret to say that there has been some big league lying in this case, but as usual we find considerable difficulty in identifying the lead-off and the cleanup batters arrayed in heavy assault against the team of truth. In passing, we merely observe that this severe disruption of a family's unity is a much worse calamity than

that of losing Mary's modest estate, and this would remain true even if her worldly goods were as valuable as all the gold of Ophir or the cattle of a thousand hills.

A. Was the testimony of the Harleys, Edward Burnett, Oscar and others on his side incompetent? Appellants contend that such testimony was clearly illegal because of section 606, subd. 2, Ky. Civil Code of Practice. We have read that code provision carefully and note that its inhibition is against a person testifying "for himself." And while Oscar testified for himself, mostly by way of stating certain conclusions as to his origin, yet neither the Harleys nor Edward Burnett nor the others mentioned by appellants testified according to personal interest, because obviously if Oscar, for whom they testified, should win his case, then Oscar alone would win all of Mary's property. Therefore, Oscar's conclusions, doubtless sifted out by the chancellor as inconsequential and unnecessary creepers, constitute only harmless error by their presence in this record. An error in admitting testimony is harmless unless it appears to have been prejudicial to the party complaining. See 2 Kentucky Digest, Appeal and Error, Key 1050. Likewise, we have held that even if a party is permitted to testify against a decedent's estate in a manner contrary to the code provision, yet this sort of error may become unimportant if other competent evidence proves the question in issue. See United States Trust Co. v. Fidelity & Columbia Trust Co., 213 Ky. 575, 281 S. W. 530. Therefore, although, some of Oscar's own testimony may have been erroneously retained in this record, yet such was a harmless error in view of the weight and character of his other evidence. We are unable to find legal fault with the testimony of his other witnesses since none of them testified "for himself" within the denouncement of our code. See section 606, subd. 2, Ky. Civil Code of Practice.

B. Was the judgment of the chancellor supported by sufficient evidence? Appellants contend that it was not. We have already summarized the evidence and mentioned the fact that Oscar's theory was supported by testimony of the Harleys and Edward Burnett, all speaking against their own personal interests, also by some disinterested witnesses, also by some introduced documents. The avoirdupois of such evidence can not

be successfully denied. The judicial scales, obeying the law of gravity, are bound to sag under its burden. The most pertinent statement we might now make is that a nonpartisan mind, unacquainted with any of these witnesses, could, on the vital issue of this case, well be as doubtful as the mind of Thomas after the Lord's resurrection. Therefore, we now say, as we have said many times in many cases, where the evidence is such as to leave the mind in doubt as to a question of fact, the judgment of the chancellor should not be disturbed on appeal. See, among many cases, Green v. Hammons, 232 Ky. 59, 22 S. W. 2d 422; Simmerman v. National Deposit Bank of Owensboro, 232 Ky. 844, 24 S. W. 2d 912; Combs v. Casebolt, 233 Ky. 192, 25 S. W. 2d 365.

Wherefore, having found no error to the prejudice of appellants' substantial rights, we now affirm the chancellor's judgment.