**Marion I. VOORHES et al., Appellants,**

**v.**

**CITY OF LEXINGTON, a Municipal Corporation, Appellee.**

Court of Appeals of Kentucky.

Jan. 31, 1964.

Rehearing Denied April 17, 1964.

Frank S. Ginocchio, Wheeler B. Boone, Lexington, for appellants.

Stoll, Keenon & Park, Lexington, for appellee.

DAVIS, Commissioner.

This is an appeal by the remonstrants from a judgment of the Fayette Circuit Court which approved proposed annexation by the City of Lexington of an area of territory adjacent to the city.

Appellants assert five points for reversal: (1) the ordinance proposing the annexation is invalid and void; (2) improper admission of evidence to determine the number of freeholders in the territory sought to be annexed; (3) erroneous determination by the trial court that less than 50% of the freeholders had remonstrated, thereby improperly casting the burden on the remonstrants; (4) annexation was erroneously permitted because it will be adverse to the interest of the city and work manifest injury to the remonstrants; and (5)

inadequacy of findings of fact and conclusions of law under CR 52.01.

Lexington is a second class city of the Commonwealth; its powers of annexation stem from the statutory enablements found in KRS 81.140. The procedure for annexation by second class cities is the same as prescribed for first class cities by KRS 81.100 and 81.110, with certain exceptions set forth in KRS 81.140.

The ordinance proposing annexation was adopted August 25, 1955, and is identified as Ordinance No. 3413. Within the thirty days permitted by statute the appellants, as resident freeholders of the area sought to be annexed, filed this remonstrance action in Fayette Circuit Court. The case was referred to then Master Commissioner Nolan Carter, who conducted extensive hearings. The Master Commissioner reported to the court pursuant to the hearings, and recommended that the proposed annexation be approved. Elaborate exceptions to the Commissioner's report were overruled; the circuit court adjudged approval of the annexation.

■ The appellants first challenge the validity of Ordinance No. 3413. It is shown that the ordinance before us was one of eighteen ordinances simultaneously enacted on August 25, 1955. Each of the eighteen ordinances proposed annexation of separately described areas. Appellants charge that such a tactic by the city was a subterfuge based on the "divide and conquer" principle. This argument is predicated upon what appellants deem to be the converse principle deducible from the "unit" doctrine. They cite Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815 and Lewis v. Town of Brandenburg, 105 Ky. 14, 47 S.W. 862. It is urged that since the residents of an area to be annexed may not split the area for the purpose of resisting annexation, the city should not be permitted to split the area to be annexed. But there is nothing in this record to reflect that Ordinance No. 3413 is splitting an area. It encompasses one unit area. We find no merit in the argument.

■ Next, the sufficiency of the metes and bounds description of the territory proposed to be annexed is attacked. The description was prepared by a civil engineer. It is quite lengthy, but engineers testified for the city that the description was readily susceptible to accurate identification. This factual issue was resolved against the contention of appellant; we find no error in this regard. Certainly the finding is not clearly erroneous within the purview of CR 52.01.

■ Appellants contend that Ordinance No. 3413 was repealed by implication when the city passed subsequent ordinances proposing annexation of parts of the same territory embraced in No. 3413. This contention was decided adversely to appellants' position in Garner v. City of Lexington, Ky., 306 S.W.2d 305. There is no merit in the contention here.

■ The second point raised by appellants relates to the claimed improper admission of evidence in determination of the critical question as to whether 50% or more of the freeholders had joined the remonstrance. It is to be noted that KRS 81.140(4) provides:

"The number of freeholders whose remonstrance will control the question of annexation or reduction shall be fifty percent."

The significance of the number of remonstrants is to be found in KRS 81.110.[1] The statute provides that if it is determined that less than 50% have remonstrated, the annexation or reduction shall

---

1. KRS 81.110 relates to first class cities, but is made applicable to second class cities by incorporation by reference in KRS 81.140. In first class cities, the controlling number of remonstrants is 75%, but in second class cities the number is 50%.

be adjudged if it is found to be "for the interest of the city, and will cause no manifest injury to the persons owning real estate in the territory sought to be annexed or stricken off * * *." Conversely, if 50% or more of the resident freeholders of the territory sought to be annexed or stricken have remonstrated, the annexation or reduction shall not take place unless it is determined "that a failure to annex or strike off will materially retard the prosperity of the city, and of the owners and inhabitants of the territory sought to be annexed or stricken off, in which case the annexation or reduction shall take place notwithstanding the remonstrance."

Appellants introduced 55 exhibits and 154 witnesses addressed to the issue of how many resident freeholders had remonstrated; this evidence showed 537 remonstrants. To prove the total number of freeholders in the area the appellants introduced the man who had collected the garbage there for more than ten years. According to that witness, the total number of resident freeholders in the area is 743. Patently, 537 remonstrants comprise more than 50% of 743 freeholders.

The city adduced evidence from a deputy county tax commissioner, supplemented by certain records of patrons of the Lexington Water Company. Based on the testimony of the deputy tax commissioner and the records of the water company, the trial court found that there are 1,599 resident freeholders in the area, thus concluding that less than 50% of the freeholders remonstrated.

Appellants earnestly argue that the evidence for the city on this issue was incompetent. We do not agree. In 32 C. J.S. Evidence § 638, pp. 499–500 it is said:

"Under the general rule * * * tax receipts and records are generally admissible as public documents, including books of assessors.

"* * * Tax lists are admissible as circumstantial evidence that the person making the return at a particular time claimed or did not claim to own certain property, where the question of ownership thereof at such time is in issue."

The same rule of evidence, as an exception to the hearsay rule, is announced in 20 Am.Jur., Evidence, § 1023, pp. 861 et seq. To the same effect is Wigmore on Evidence, Vol. 5, § 1640, pp. 552 et. seq. The rationale of this rule is found in the fact that such records are made by persons having no motive to suppress or distort the truth or to manufacture evidence, and, moreover, are made in the discharge of a public duty.

The principle just discussed was recognized by this court long ago. See Sutton v. Floyd, 46 Ky. 3, wherein the tax list of John Floyd, in the handwriting of the tax commissioner, was found admissible "without direct proof that it was given in or sworn to by John Floyd, or that he was ever actually apprised of its contents. The presumption is that both he and the officer performed the duties enjoined upon them respectively by law, and, therefore, that the list was the act of John Floyd. As such it furnished (with other testimony in the cause) ground for the inference that he did not regard those notes as a part of his estate or property, and was, therefore, material in the case."

From what has been said it is apparent that the type of evidence here used was sufficient to raise a *prima facie* case based on circumstantial evidence. It could have been refuted, of course, by the introduction of rebutting evidence. However, we are not prepared to say that the testimony of the garbage man was of such high order as to require the utter disregard of the tax cards. The trial court resolved that preliminary fact against the appellants on the evidence produced; there was competent evidence to sustain the finding; we find no basis for reversible error in the

court's ruling on this phase of the litigation.

■ What we have said disposes of the third contention of appellants, since the evidence accepted reflects that less than 50% of the resident freeholders joined in the remonstrance suit. It follows, therefore, that the case proceeded properly as one in which less than 50% of the freeholders remonstrated.

■ We now consider whether the evidence warrants the trial court's ruling on the merits of the case. We recall that KRS 81.110(2) directs that the proposed annexation shall be permitted if the annexation will be for the interest of the city, and will cause no manifest injury to the persons owning real estate in the territory sought to be annexed, since less than 50% of the resident freeholders have made remonstrance.

The city urges the following considerations as supporting the premise that the annexation "will be for the interest of the city": (a) the city will expand its area to the extent of the size of the territory to be annexed; (b) there will be a net income increase to the city, after considering costs of servicing the area and loss of certain presently charged sewer rentals; (c) sociological, economic and geographic developments of the city will result from the annexation; (d) legal and political difference between the city and the area proposed for annexation will disappear, and unity will result; (e) the city will gain as citizens a great number of substantial citizens whose participation in city affairs will be of benefit to the city; (f) the general health, welfare and safety of the city will be promoted as the result of the city's gaining jurisdiction of the area for police and fire protection, for traffic control and disposal of sewage.

To counter the foregoing assertions of results "for the interest of the city" the appellants offered testimony, primarily through Dr. James Clifton Eaves, to the effect that the proposed annexation would result in a financial loss to the city. Competent evidence on both sides of this issue was before the trial court. Necessarily, much of the evidence on both sides of the question is based upon somewhat uncertain forecasts of coming events. It may not be said that the evidence for either side of the proposition is so convincing as to preclude another conclusion. In this state of case, we do not find that the decision of the trial court was clearly erroneous; indeed, we do not find it to be erroneous at all. Thus, we hold that the evidence adequately supports the finding that the proposed annexation is "for the interest of the city."

Appellants maintain that the annexation must fail because it will produce "manifest injury" to the resident freeholders of the area sought to be annexed. To support this proposition they point out that the residents of the area already have natural gas, city water, electricity, telephone service, bus service, daily mail service and taxi service. Moreover, the area is developed with well-paved streets, sidewalks, curbs and gutters. In short, it may be said that appellants feel no need for anything the city professes to have to offer.

■ For appellants it is urged that the imposition of city taxes will reduce the value of the property, and, indeed, will cause some of the residents to lose their homes in mortgage foreclosures. This dire consequence is envisioned on the basis that many of the homeowners in the area obtained 100% financing through government lending available to war veterans. Whether the gloomy prospect of financial debacle will follow from bearing the added burden of city taxes may be doubted. However, there is no doubt that the necessity of paying city taxes is not the character of injury contemplated by the annexation statutes. Cf. City of Louisville v. Sullivan, 302 Ky. 86, 193 S.W.2d 1017; Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.

W.2d 815; and 37 Am.Jur., Municipal Corporations, § 29, pp. 646 et seq.

It is true that the appellants already enjoy many of the benefits associated with urban living. None of these is to be taken away. The evidence for the city reflects these benefits for the residents of the area to be annexed: substantial saving in annual insurance premiums, improvement in fire protection service, better police protection, free garbage collection service, better sewage disposal, abrogation of health hazards incident to septic tank sewage disposal, installation of street lights, better street maintenance, and the prospect of increased property values resulting from these cumulative benefits.

The appellants cite as a burden indicating manifest injury the thrusting upon them of the responsibilities as citizens of the city. In City of Cold Spring v. Laycock, Ky., 312 S.W.2d 882, it was said:

> "We think a consideration often overlooked is the burden of responsibility for the proper conduct of city affairs which is placed upon freeholders who are involuntarily made city voters."

It should be observed that the cited portion of that opinion regards the involuntary responsibility of city citizenship as "a consideration." It is a burden; it should be taken into account, but it is not a decisive thing. If it were, there could be no annexation. On this entire record we find that consideration of the responsibility of citizenship does not tip the scale to such extent that the overall burdens constitute "manifest injury" within the meaning of the statute.

Finally, the appellants challenge the sufficiency of the findings of fact and conclusions of law. CR 52.01. We have reviewed the findings of fact and conclusions of law as contained in the report of the Master Commissioner. The trial court adopted the Master's findings. Those findings, composed in opinion form, do contain the factual findings of the Master Commissioner as well as his legal conclusions therefrom. They comprise seven pages in the record and evince a thorough and careful consideration of the voluminous record. CR 52.01 specifically provides:

> " * * * The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * * "

Therefore, we find no merit in the contention of the appellants as to the inadequacy of findings of fact and conclusions of law.

The judgment is affirmed.