Charles PRATER, Appellant,

v.

**CABINET FOR HUMAN RESOURCES, COMMONWEALTH OF KENTUCKY; Daisy Prater Jayne; C.C.P.; B.L.P.; and C.L.P., Appellees.**

No. 95–SC–413–DG.

Supreme Court of Kentucky.

Oct. 2, 1997.

Stephen A. Sanders, Appalachian Research & Defense Fund of Ky., Inc., Prestonsburg, for Appellant.

W. Kimble Moore, Jr. Cabinet for Human Resources, Terry L. Morrison, Cabinet for Human Resources, Frankfort, Timothy Parker, Prestonsburg, Gordon B. Long, Salyersville, for Appellees.

## OPINION

COOPER, Justice.

Appellant and Daisy Prater Jayne are the natural parents of C.C.P., d.o.b. December 3, 1983, B.L.P., d.o.b. December 12, 1984, and C.L.P., d.o.b. April 8, 1986. The children were removed from the custody of Appellant and his wife by the Cabinet for Human Resources (CHR) on October 4, 1986. The Cabinet subsequently filed a petition in the Magoffin Circuit Court for involuntary termination of parental rights. Following an evidentiary hearing held on November 12, 1992, judgment was entered granting the petition for termination and awarding permanent custody to the Cabinet. Appellant appealed to the Court of Appeals, which affirmed the trial court's decision. We granted discretionary review primarily to clarify the application and relationship of two provisions of the Kentucky Rules of Evidence, *viz:* KRE 803(8), the public records exception to the hearsay rule, and KRE 803(6), the records of regularly conducted activities exception, more often referred to as the business records exception, to the hearsay rule.

The Circuit Court's judgment was predicated upon findings (1) that the children were abused and neglected as defined in KRS 600.020(1), *i.e.*, the parents had failed or refused to provide essential care for the children and there was no reasonable expectation of significant improvement in parental conduct in the foreseeable future; (2) that the termination was in the best interests of the children; and (3) that the Cabinet was the best qualified to receive custody. Appellant raises two preliminary issues which should be addressed before proceeding to the evidence issues.

■ First, Appellant claims the trial court failed to make independent findings of fact as required by CR 52.01. He bases this allegation on the fact that the trial court adopted the Cabinet's proposed findings of fact without correction or change. The trial court requested both parties to submit proposed findings of fact, which both did. It is not error for the trial court to adopt findings of fact which were merely drafted by someone else. *Bingham v. Bingham*, Ky., 628 S.W.2d 628 (1982).

■ Next, Appellant asserts that the Cabinet failed to provide services to Appellant pursuant to its duty as set forth in KRS 625.090(2)(c). The Cabinet's treatment plan provided for a five day initial foster care conference after the children were placed in its care. At this meeting, the various problems which led to the children's removal were discussed. The parents were advised of a plan, but they refused to cooperate or take advantage of the services, which included counseling. Appellant was enrolled in an alcohol treatment program, but was discharged following a determination that he was not cooperating. Appellant then entered and completed a thirty-five day program, but refused to release the results to the Cabinet. He was incarcerated for a substantial period during the time after the children were removed and before the hearing on the petition for termination. Thus, services were offered to the extent possible, but Appellant failed to avail himself of them.

The Cabinet's evidence consisted of its own case report and the testimony of three social workers. Sandra McGuire conducted case conferences with Appellant and his wife but did not come into direct contact with the family until 1990. She qualified the Cabinet's case report on the family as having been prepared in accordance with the requirements of KRE 803(6) and was permitted to introduce the report over Appellant's objection. In addition to factual observations made by social workers assigned to the case, the case report includes hearsay statements made by Daisy Prater Jayne's niece, M.A., accusing Appellant and Daisy of physically and sexually abusing all three children. In addition, the report contains a letter from Lane J. Veltkamp, certified clinical social worker and director of the child abuse clinic at the University of Kentucky Medical Center Hospital, describing his examination of M.A. The record also contains the medical records of Dr. Charles Hardin, who conducted physical examinations of C.C.P., B.L.P. and C.L.P. at the Cabinet's request.

In his report, Veltkamp repeats M.A.'s allegations that Appellant and his wife sexually abused their children. Dr. Hardin's records also repeat M.A.'s allegations with respect to the alleged abuse of each respective child and contain the results of Dr. Hardin's examinations. Although Dr. Hardin's handwritten records are difficult to decipher, Sandra McGuire testified without objection that they contain findings that all three children had rectal infections and that C.C.P. had rectal abrasions. The records also reflect that when questioned as to the cause of half-inch second degree burns to the third and fourth digits of his right hand, C.C.P. responded "mommy burned;" and when questioned about a half-inch by three centimeter abrasion on his face, C.C.P. responded "mommy hit."

Brenda Campbell, the social worker who first interviewed M.A., testified that the Cabinet's report accurately reflects the statements made to her by M.A. Finally, Kathy Plummer, who had been the children's foster care worker for approximately six months before the final hearing, testified to her personal observation of the children's fears of dark rooms, hot baths, other person's hands, and having their diapers changed.

Appellant argues that the CHR case report should have been excluded pursuant to KRE 803(8)(B), which provides that investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party "are not within this exception to the hearsay rule." The Cabinet argues that even if its case report is not admissible under KRE 803(8), the report was properly admitted under KRE 803(6).

Prior to the 1992 adoption of the Kentucky Rules of Evidence, there existed in the common law of Kentucky both a public records exception and a business records exception to the hearsay rule. In addition, there were statutory provisions providing for the admissibility of public records, KRS 422.020 and KRS 422.050, which were repealed concomitantly with the adoption of the new rules. 1990 Ky. Acts ch. 88, § 92; 1992 Ky. Acts ch. 324, § 33. The common law and statutory exceptions for public records were seldom used and only to justify the admissibility of such documents and records as city maps, *Hines v. May*, 191 Ky. 493, 230 S.W. 924 (1921), income tax returns, *Curd v. Commonwealth*, 312 Ky. 457, 227 S.W.2d 1003 (1950), deeds, *Culton v. Simpson*, 277 Ky. 808, 127 S.W.2d 826 (1939), and tax assessment records, *Voorhes v. City of Lexington*, Ky., 377 S.W.2d 57 (1964). R. Lawson, *The Kentucky Evidence Law Handbook*, § 8.80, at 284 (2nd ed., Michie, 1984). No cases are found where the pre-code public records exceptions were used to admit investigative reports.

The common law business records exception was well developed and was used to justify the admission of records not only of private businesses, but also of public agencies. *Garner v. Commonwealth*, Ky., 645 S.W.2d 705 (1983); *O.C.E. v. Department for Human Resources*, Ky.App., 638 S.W.2d 282 (1982). Specifically, the business records exception was used to allow introduction of records compiled by social workers in proceedings for termination of parental rights, *L.K.M. v. Department for Human Resources*, Ky.App., 621 S.W.2d 38 (1981), subject to exceptions pertaining to specific entries in those records. *Cabinet for Human Resources v. E.S.*, Ky., 730 S.W.2d 929

(1987); *G.E.Y. v. Cabinet for Human Resources*, Ky., 701 S.W.2d 713 (1985).

The drafters of the Kentucky Rules of Evidence used the Uniform Rules of Evidence rather than the Federal Rules of Evidence as the model for KRE 803(8). The Kentucky rule is more restrictive than FRE 803(8). For example, FRE 803(8) admits records of the "activities of the office or agency," whereas KRE 803(8) requires that the records be of the agency's "regularly conducted and regularly recorded activities." The Federal rule admits factual findings resulting from investigations made pursuant to authority granted by law in any civil action, but only against the government in a criminal action. KRE 803(8) also admits factual findings resulting from an investigation made pursuant to authority granted by law, but identifies three types of records and reports that "are not within this exception to the hearsay rule":

(A) Investigative reports by police and other law enforcement personnel;

(B) Investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; and

(C) Factual findings offered by the government in criminal cases.

Thus, while FRE 803(8) is available to admit investigative reports of public agencies in any civil action, KRE 803(8) is available to admit such reports only if the agency is not a party or if the report is offered by another presumably adverse party.

■ Appellant asserts that since the records and reports described in (A), (B) and (C) above are not within the public records exception to the hearsay rule, such records and reports are never admissible, even if they satisfy the requirements of some other exception to the hearsay rule. Thus, CHR case records could never be used in an action for termination of parental rights. However, Appellant's interpretation overlooks the fact that KRE 803(8) does not purport to exclude these types of records and reports from introduction as evidence. The rule merely excludes KRE 803(8) as a vehicle available for accomplishing their introduction. In this re-

spect, the rule is consistent with pre-code applications of the common law and statutory public records exceptions.

Even though the foundation requirements for admissibility under KRE 803(8) are stricter than those required by its federal counterpart, those requirements are substantially more relaxed than the foundation requirements contained in the business records exception, KRE 803(6). R. Lawson, *The Kentucky Evidence Law Handbook*, § 8.70, at 474–75 (3rd ed., Michie, 1993). For example, KRE 803(6) requires foundation testimony from a "custodian or other qualified witness." There is no such requirement in KRE 803(8). A record is not admissible under KRE 803(6) unless its maker or someone reporting to the maker under a business duty to do so, Lawson (3rd ed.), *supra*, § 8.65V, at 465–66, had personal knowledge of the event recorded. Such is not required by KRE 803(8) if the record is of a regularly conducted and regularly reported activity. KRE 803(6) requires that the entry be made at or near the time that the recorded event occurs. Again, KRE 803(8) contains no such requirement. Note that both rules contain a disclaimer that admission can be denied if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Thus, the trial judge retains some discretion to exclude the record even if it technically satisfies the foundation requirements of the rule. *Compare* KRE 403.

█ The common law rationale for the admission of public records with reduced foundation requirements was that they were prepared in the discharge of public duty by persons having no motive to suppress or distort the truth or to manufacture evidence. *Voorhes v. City of Lexington*, *supra*, at 60. Judge Weinstein also notes that the reduced foundation requirements are reflective of the fact that assurances of accuracy are greater for public records than for regular business records. Weinstein & Berger, *Weinstein's Evidence Manual*, § 16.07[01][a] (1996). The exceptions set forth in KRE 803(8)(A), (B) and (C) recognize that government records are sometimes prepared under circumstances where the absence of a motive to suppress or distort the truth might be called into question. One such instance is when an investigative report is prepared by a government agency which intends to use it as evidence in a case in which that agency is a party. When prepared in such a self-serving context, the trustworthiness of the report is subjected to heightened scrutiny. *See Cabinet for Human Resources v. E.S.*, *supra*, at 932; *G.E.Y. v. Cabinet for Human Resources*, *supra*, at 715. One aspect of that heightened scrutiny is that it is not admissible under the more relaxed foundation requirements of KRE 803(8). But that does not result in an automatic exclusion of the report. It only means that in order to be admitted into evidence, the report must satisfy the more stringent foundation requirements of KRE 803(6). We note also that the definition of "business" in KRE 803(6), *i.e.*, any "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit ..." is broad enough to include a public agency.

█ Of course, even if a public agency's investigative report satisfies the foundation requirements of KRE 803(6), that does not authorize a carte blanche admission of each individual entry contained in the report. KRE 803(6) and KRE 803(8) only satisfy the hearsay aspects of the business or public record, itself. If a particular entry in the record would be inadmissible for another reason, it does not become admissible just because it is included in a business or public record. *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856, 862 (1993). Thus, we have held that the factual observations of social workers recorded in CHR case records are admissible under the business records exception, because such observations would be admissible if the social worker testified in person; but the recorded opinions and conclusions of social workers are not admissible, because the persons offering those opinions are insufficiently qualified to render expert opinions. *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990); *Cabinet for Human Resources v. E.S.*, *supra*. *See* KRE 803(6)(B). More specifically, hearsay within hearsay, *i.e.*, "double hearsay," is inadmissible unless each part of the combined state-

ments conforms with a recognized exception to the hearsay rule. KRE 805. Thus, we have held that hearsay statements made by children to social workers in the course of an abuse or neglect investigation, or otherwise, do not become admissible simply because they are memorialized in a CHR case record. *Alexander v. Commonwealth, supra*, at 862; *Sharp v. Commonwealth*, Ky., 849 S.W.2d 542 (1993); *Drumm v. Commonwealth, supra*. "There is no recognized exception to the hearsay rule for social workers or the results of their investigations." *Souder v. Commonwealth*, Ky., 719 S.W.2d 730, 734 (1986). Brenda Campbell's report of C.C.P.'s and M.A.'s accusations of physical and sexual abuse perpetrated by Appellant and his wife against their children was inadmissible hearsay, whether offered by Campbell in her own testimony or as reported by her in the CHR case report. In addition, the statements attributed to M.A. in the CHR case report are not within the business records exception, KRE 803(6), because, unlike the social workers, M.A. was not under a business duty to report her information to the Cabinet.

The Cabinet asserts that M.A.'s unavailability to testify because her adoption had already been finalized affects the admissibility of her statements. The unavailability of a witness is relevant only if that witness' hearsay statements fall within one of the exceptions enumerated in KRE 804(b). None of those exceptions apply to the statements attributed to M.A. in this case.

■ The identical hearsay statements attributed to M.A. in the Veltkamp report were also inadmissible. Although *Edwards v. Commonwealth*, Ky., 833 S.W.2d 842 (1992) held that statements made to a licensed clinical psychologist for the purpose of treatment for sexual abuse were admissible under the hearsay exception for statements made for the purpose of medical treatment or diagnosis, KRE 803(4), Mr. Veltkamp is not a psychologist and did not purport to be rendering treatment to M.A. Furthermore, KRE 803(4) applies only to statements "reasonably pertinent to the treatment or diagnosis" of the declarant or the infant child or ward of the declarant.

*See Miller v. Watts*, Ky., 436 S.W.2d 515 (1969). Because M.A.'s recitation of abuse perpetrated against C.C.P, B.L.P. and C.L.P. was not reasonably pertinent to *her own* treatment or diagnosis, the statements did not fall within the parameters of the exception. For the same reason, M.A.'s statements to Dr. Hardin alleging sexual abuse of the other children should not have been admitted.

■ The Court of Appeals found the erroneous admission of M.A.'s hearsay allegations of physical and sexual abuse to be irrelevant, because there was other evidence sufficient to support the trial judge's decision to terminate Appellant's parental rights. Admission of incompetent evidence in a bench trial can be viewed as harmless error, but only *if the trial judge did not base his decision on that evidence, G.E.Y. v. Cabinet for Human Resources, supra*, at 715, *Holcomb v. Davis*, Ky., 431 S.W.2d 881, 883 (1968), or *if there was other competent evidence to prove the matter in issue, Escott v. Harley*, 308 Ky. 298, 214 S.W.2d 387, 389 (1948). Here, the trial judge found "clear and convincing" evidence that:

> 9. . . . Due to the mother's negligence, [C.L.P.]'s leg was seriously burned when she leaned against a stove with the baby in her arms. . . .
>
> 11. The respondent parents have sexually abused the children. The evidence showed that Daisy Prater Jayne had oral sexual intercourse with the boys, [C.C.P. and B.L.P.] and penetrated [C.L.P.]'s vagina with her thumb. The evidence further indicates that [Appellant] had anal intercourse with the boys, and vaginal intercourse with [C.L.P.]. After their removal, medical examination showed the children to have rectal infections and one, [C.C.P.], had rectal abrasions.

Transcript of Record, Vol. II, p. 214.

■ Appellant sought to exclude this evidence by a motion *in limine*, which was overruled by an order of record. KRE 103(d). Although the trial judge's findings of fact do recite other evidence of neglect and physical abuse, his recitation of the specific instances of physical and sexual abuse de-

scribed in the quoted paragraphs indicates that his decision to terminate Appellant's parental rights was based at least in part on that evidence. Sandra McGuire testified that the Cabinet would not have sought termination solely on the basis of the evidence of neglect or physical abuse. Except for the hearsay statements of M.A., there was no evidence to prove sexual abuse or the cause of the burns on C.L.P.'s leg. Since Dr. Hardin did not testify, there was no medical proof of the cause of the rectal infections and abrasions described in his report. Because the trial judge relied on incompetent evidence of physical and sexual abuse in reaching his decision, and because there was no other competent "clear and convincing" evidence to prove the acts of physical and sexual abuse recited in paragraphs 9 and 11 of his findings of fact, this action must be remanded for a new trial at which the hearsay statements of M.A. will be excluded. Because the case must be retried, it is necessary to briefly address the other hearsay issues raised by Appellant.

 The statements made by C.C.P. to Dr. Hardin were properly admitted. The children were referred to Dr. Hardin by the Cabinet for purposes of examination, diagnosis and treatment. Thus, Dr. Hardin had the requisite business duty to report his findings to the Cabinet in order for his report to be admissible as a part of the Cabinet's business record under KRE 803(6). *Cf. G.E.Y. v. Cabinet for Human Resources, supra,* at 716. The statements made to Dr. Hardin by C.C.P. satisfy the requirements for admission under KRE 803(4). Prior to the adoption of the Kentucky Rules of Evidence, this court adopted FRE 803(4) by judicial fiat in *Drumm v. Commonwealth, supra.* In doing so, we also adopted the interpretation of FRE 803(4) advanced by retired United States Supreme Court Justice Lewis Powell in his concurring opinion in *Morgan v. Foretich,* 846 F.2d 941 (4th Cir.1988). That interpretation abolishes the technical distinction between whether a physician reiterating a patient's history is a treating physician or a "testifying" physician, and adopted a balancing test of whether the "prejudicial effect outweighs its probative value." *Drumm v. Commonwealth, supra,* at 385. Clearly, it

was appropriate for Dr. Hardin to inquire of C.C.P. as to the etiology of the burns and abrasions observed during his examination. The probative value of the child's response from the physician's point of view outweighs any prejudicial effect. *United States v. Renville,* 779 F.2d 430, 437 (8th Cir.1985); *cf. Edwards v. Commonwealth, supra; Jones v. Commonwealth,* Ky., 833 S.W.2d 839 (1992). This is particularly true here since the child's response did not allege any abuse by Appellant.

 Appellant asserts that it was error to permit Plummer to testify to her observations of the children's fears of dark rooms, hot baths, etc. Plummer's testimony in this regard was not hearsay. *Partin v. Commonwealth,* Ky., 918 S.W.2d 219, 222 (1996). Even if that were not so, these out-of-court expressions of fear by the children would fall within the so-called "state of mind" exception to the hearsay rule, KRE 803(3). *Cf. L.K.M. v. Department for Human Resources, supra.*

For the reasons stated in this opinion, we reverse the decision of the Court of Appeals and remand this action to the Magoffin Circuit Court for a new trial at which the hearsay allegations of physical and sexual abuse attributed to M.A. shall be excluded.

STEPHENS, C.J., and GRAVES, JOHNSTONE and LAMBERT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

STUMBO, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because I believe the Court of Appeals was correct that the records in question are admissible under the business records exception.

I can agree with much that is written in the lengthy and learned majority opinion which is an effort to clarify the application of the Kentucky Rules of Evidence. However, I believe the result in this case is in error.

The crucial issue before this Court is the relationship between KRE 803(4), KRE 803(6) and KRE 803(8)(B). The specific issue involves the admissibility of records of the CHR and the testimony of CHR employees based on those records. The Cabinet argues that the various records were properly admitted under the medical records exception or the business records exception to the hearsay rule. Prater, through his counsel, claims that the hearsay evidence used in this case is specifically excluded under KRE 803(8)(B) relating to investigative reports prepared for or by a government or an agency when offered by it in a case in which it is a party.

*Cabinet for Human Resources v. E.S.*, Ky., 730 S.W.2d 929 (1987), held that a social worker's entries which consisted of factual observations and not opinions and conclusions carry with them the requisite amount of trustworthiness and are admissible under the business records hearsay exception. Consequently, I must agree with the unanimous Court of Appeals panel that those records which are admissible under the business record exception should not be prohibited under the public records exception in this case.

It is beyond question that CHR established by clear and convincing evidence that the children were abandoned, neglected and abused pursuant to KRS 625.090(1). The Cabinet also demonstrated that Prater failed to cooperate concerning treatment and rehabilitation. KRS 625.090(2). In addition, CHR also showed that the children are displaying signs of continued improvement and would continue to do so, and it would be in their best interests if parental termination was ordered.

The rationale for KRE 803(8)(B) is sound. It is simply to prevent hearsay to be added to hearsay when used in the investigative reports of governmental agencies. The potential for abuse of hearsay material found in government agency files at any level should be carefully scrutinized and guarded against. Here, it is not necessary to rely on such a technical rule. The real reason for the rule is to prevent any possibility of governmental tyranny in the prosecution of individual citizens.

In this case, the result is that the children now in foster care will never be eligible for adoption unless other significant evidence is uncovered. Although we must recognize that parental termination is a permanent condition, the best interests of the children cannot be ignored.