ROCKWELL INTERNATIONAL CORPORATION, Appellant,

v.

COMMONWEALTH of Kentucky, NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Appellee.

No. 1997–CA–001599–MR.

Court of Appeals of Kentucky.

Aug. 13, 1999.

Discretionary Review Denied by Supreme Court May 10, 2000.

317

Andrew L. Frey, Evan M. Tager, Miriam R. Nemetz, Washington, DC, M. Stephen Pitt, Virginia H. Snell, J. Anthony Goebel, Donald J. Kelly, Louisville, KY, for appellant.

Kathryn M. Hargraves, Brenda G. Lowe, Frankfort, KY, for appellee.

John S. Reed, Louisville, KY, William G. Fuqua, Russellville, KY, for Amicus Curiae Assoc. Industries of Ky.; Ky. Bankers Assoc.; Logan County Economic Development Commission; Andillinois Tool Works.

Robert C. Moore, Frankfort, KY, for Amicus Curiae Senator Kim Nelson.

Before: BUCKINGHAM, COMBS, and McANULTY, Judges.

## *OPINION*

BUCKINGHAM, Judge.

Rockwell International Corporation (Rockwell) appeals from a judgment of the Franklin Circuit Court finding Rockwell in violation of Kentucky environmental protection laws found in Kentucky Revised Statutes (KRS) Chapter 224 and regulations of the Natural Resources and Environmental Protection Cabinet (the Cabinet), enjoining Rockwell to correct those violations, and ordering Rockwell to pay the Cabinet its actual and necessary costs expended in response to the violations. We affirm.

Rockwell operated a plant in Russellville which manufactured gas meter components and typewriter housings from 1957 to 1989. The plant was then sold to a division of British Tire and Rubber, which operates the plant under the name BTR Precision Die Casting, Inc. (BTR). Rockwell used a hydraulic fluid which contained polychlorinated biphenyls (PCBs) in its manufacturing process. Rockwell apparently completed a conversion to non-PCB based hydraulic fluid by 1975. Nevertheless, during an inspection of the Rockwell facility in 1985, the Cabinet discovered PCBs.

Further investigation and testing by the Cabinet revealed that PCBs were present in the sediments of the Town Branch Creek and Mud River as well as in adjacent flood plain surface soils. Runoff from the plant flcws into the Town Branch Creek through three drainage tributaries called North Ditch, South Ditch, and East Ditch. The Town Branch Creek flows into Mud River, and Mud River extends sixty-four miles from its confluence with the Town Branch Creek to the Green River.

In September 1985, the Cabinet issued an advisory warning that fish in the Town Branch Creek and Mud River contained PCBs. Rockwell began a program to determine the extent of the PCB problem, to prevent further releases, and to clean up existing contamination. Rockwell conducted extensive remediation at the plant site and conducted comprehensive studies to determine the nature and extent of potential ground water contamination. Rockwell also conducted risk assessments analyzing the risks to human health, safety, and the environment associated with PCBs in Town Branch, Mud River, and the surrounding flood plain.

In 1986, the Cabinet filed a complaint against Rockwell in the Franklin Circuit Court seeking enforcement of Kentucky's environmental laws by injunctive relief. *See* KRS 224.99–020. Over the next several years, a series of agreed interim orders was entered by the trial court. In early 1995, Rockwell presented a final remediation plan to the Cabinet, which the Cabinet rejected. The Cabinet then sought a trial date, and the trial court conducted a bench trial in December 1995 and January 1996.

On March 24, 1997, the trial court entered a judgment finding Rockwell in violation of environmental protection statutes and regulations, enjoining Rockwell to correct the violations, and ordering Rockwell to pay the Cabinet its actual and necessary costs to respond to the violations. The trial court reserved the imposition of civil penalties until the cleanup and remediation were substantially completed. This appeal by Rockwell followed.

The parties have extensively briefed the arguments raised in Rockwell's appeal, and amicus curiae briefs have also been filed. Numerous arguments have been raised in this complex case, and we will address the issues raised by Rockwell's three arguments in the order in which they appear in Rockwell's brief.

■ Rockwell's first argument is that the trial court failed to determine the issues de novo. It argues that "the court proceeded as though it was engaged in appellate review of an administrative action." It also contends that the court "merely found that the *Cabinet's* determinations were *not unreasonable*" and that "the court adopted as its findings long passages quoted verbatim from the Cabinet's post-trial briefs." Rockwell states that as this is not an appeal from an administrative agency adjudication, judicial deference to the Cabinet's determinations is not appropriate. It urges this court to reject the trial court's judgment on the basis of an alleged failure to determine the facts and issues de novo.

We have closely reviewed the trial court's judgment and find no indication that the trial court viewed the case as merely a review of an administrative agency action. Although the trial court may have accepted the Cabinet's arguments and view of the case, that by no means indicates that the trial court did not decide the issues de novo. In arriving at judgments, trial courts are generally faced with accepting the views of one party or the other. Furthermore, we find no error in the trial court's adopting language from a party's brief for use in its judgment. *See Bingham v. Bingham*, Ky., 628 S.W.2d 628, 629 (1982), and *Prater v. Cabinet for Human Resources, Commonwealth of Kentucky*, Ky., 954 S.W.2d 954, 956 (1997). The trial court prepared its own lengthy judgment (forty-six pages), and there is no indication that the trial court failed to make its determinations de novo.

■ Rockwell's second argument is that the trial court improperly applied KRS 224.01–400. KRS 224.01–400(18) provides as follows:

Any person possessing or controlling a hazardous substance, pollutant, or contaminant which is released to the environment, or any person who caused a release to the environment of a hazardous substance, pollutant, or contaminant, shall characterize the extent of the release as necessary to determine the effect of the release on the environment, and shall take actions necessary to correct the effect of the release on the environment. Any person required to take action under this subsection shall have the following options:

(a) Demonstrating that no action is necessary to protect human health, safety, and the environment;

(b) Managing the release in a manner that controls and minimizes the harmful effects of the release and protects human health, safety, and the environment;

(c) Restoring the environment through the removal of the hazardous substance, pollutant, or contaminant; or

(d) Any combination of paragraphs (a) through (c) of this subsection.

KRS 224.01–400(21) provides as follows:

A person required to take action under subsection (18) of this section who does not restore the environment through removal of the hazardous substance, pollutant, or contaminant in accordance with subsection (18)(c) of this section shall demonstrate to the cabinet that the remedy is protective of human health, safety, and the environment, by considering the following factors:

(a) The characteristics of the substance, pollutant, or contaminant, including its toxicity, persistence, environmental fate and transport dynamics, bioaccumulation, biomagnification, and potential for synergistic interaction and with specific reference to the environment into which the substance, pollutant, or contaminant has been released;

(b) The hydrogeologic characteristics of the facility and the surrounding area;

(c) The proximity, quality, and current and future uses of surface water and groundwater;

(d) The potential effects of residual contamination of potentially impacted surface water and groundwater;

(e) The chronic and acute health effects and environmental consequences to terrestrial and aquatic life of exposure to the hazardous substance, pollutant, or contaminant through direct and indirect pathways;

(f) An exposure assessment; and

(g) All other available information.

Rockwell contends that the trial court erred in rejecting its site-specific risk assessments. Within this argument, Rockwell asserts that the trial court improperly accepted the Cabinet's exposure assumptions which Rockwell contends were unrealistic. KRS 224.01–400(21)(f) requires that consideration be given to an "exposure assessment" in determining whether the remedial action proposed to be taken is protective of human health, safety, and the environment. The trial court was faced with conflicting exposure assessments from the parties' expert witnesses. Since the trial court determines the credibility and weight to be given to evidence, it is the function of the trial judge to choose which evidence to accept. *Singer v. Singer*, Ky., 440 S.W.2d 783, 785 (1969). We will not interfere with that choice, unless it is clearly erroneous. *Id.* Since it is our conclusion that the Cabinet's exposure assumptions were not so unrealistic as to preclude the trial court from accepting them, we hold that the trial court did not clearly err in this regard.

Rockwell also contends that the trial court erred by accepting the Cabinet's cancer risk assessment level of $10^{-6}$. The risk level proposed by the Cabinet and accepted by the trial court was within the range employed by the Environmental Protection Agency (EPA) and was within the $10^{-4}$ to $10^{-6}$ range proposed by Rockwell. We determine no error by the trial court in accepting this risk standard.[1]

1. Rockwell asserts that this cancer risk assessment level was rejected by the General Assembly after the Cabinet's attempt to have the General Assembly adopt a regulation which would have required all cleanups conducted under the statute to reduce the excess cancer risk below this level. The fact that the General Assembly chose not to adopt a regulation providing for such a level in all cleanups under the statute does not mean that the trial court could not set such a level in this case.

Also, the amicus curiae briefs assert that the trial court has now approved an excess cancer risk standard for all cleanups in Kentucky. We do not perceive that the trial court's judgment did this, nor do we believe that the trial court had the authority to set a standard for all cleanups. The excess cancer risk standard set by the trial court in this case is applicable only to the Rockwell Russellville cleanup.

Rockwell next argues that the trial court improperly based the sediment cleanup standard on flawed data concerning the fish in Town Branch and Mud River. The Cabinet presented evidence to support this cleanup level, and the trial court was within its discretion and did not act clearly erroneously in accepting the Cabinet's proof in this regard. *See Singer, supra.*

 Rockwell next contends that the trial court erroneously failed to consider the impact and feasibility of the cleanup that was ordered. While the trial court did not mention the impact and feasibility of the cleanup in its judgment, there was evidence at trial to support Rockwell's argument in this regard. The mere absence of any reference to the impact and feasibility of the cleanup that was ordered does not mean that it was not considered by the trial court. Had Rockwell considered a finding on this issue to be essential to the judgment, it should have brought the absence of such a finding to the attention of the trial court by a written request for a finding or by a motion pursuant to Kentucky Rule of Civil Procedure (CR) 52.02. Otherwise, the judgment may not be reversed for this reason. CR 52.04.

In addition, the trial court was not bound to accept Rockwell's argument that the cost and other factors relating to the impact and feasibility of the cleanup would outweigh the advantages of a cleaner environment. The trial court was within its right to "balance [the] inconvenience" to Rockwell with the benefit to the environment. *See Bartman v. Shobe,* Ky., 353 S.W.2d 550, 554 (1962).

Rockwell's third argument is that the trial court misapplied the Kentucky water quality laws, and Rockwell contends that the trial court erred in its use of those laws to set cleanup standards. It asserts that the standards set in Kentucky's water quality laws may not be imposed directly as cleanup standards. Rockwell cites no authority for this argument, and we see no error in the trial court's effecting a correlation between the standards set in the water quality laws and the standard for the cleanup.

Rockwell also contends that the trial court erred by including the issue of storm water discharges in its ruling. Rockwell argues that the trial judge had stated during the trial that he was not going to make any adjudication on that issue because BTR had filed an administrative appeal concerning the issue. The administrative appeal was filed after Rockwell's complaint in this case. As there was evidence concerning the issue before the trial court, and as we are cited to no authority which would prohibit the trial court from ruling on this matter, we conclude that the trial court did not commit error in addressing this matter in its judgment.

The judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.

