RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0575-ME

T.C.                                                                                    APPELLANT

v.
APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 23-AD-00022

THE COMMONWEALTH OF
KENTUCKY AND THE CABINET
FOR HEALTH & FAMILY
SERVICES; A.T., MINOR CHILD;
AND D.T.                                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, L. JONES, AND MᴄNEILL, JUDGES.

ACREE, JUDGE:  Appellant, T.C. (Mother), appeals the Perry Circuit Court's

May 8, 2024 order terminating her parental rights to A.T. (Child).  We affirm.

## BACKGROUND

As acknowledged in her brief, Mother has "a long-term addiction to illegal controlled substances." Appellant's Br. at 1. Child was born in 2020, and "was born positive for controlled substances," leading to the involvement of Appellee Cabinet for Health & Family Services (Cabinet). *Id.* Child was removed from the custody of Mother and the putative father.[1] *Id.* The Perry District Court found Child was a neglected or abused child. *Id.* The Cabinet provided Mother "services to complete in order to regain custody." *Id.* at 2. Specifically, Mother "was asked to complete parenting classes, a mental health assessment, [intensive outpatient program (IOP) for drug addiction], random drug screens, have consistent visits with the child, and do a UK [targeted assessment program (TAP)] assessment." *Id.*

The circuit court concluded it was in Child's best interest Mother's parental rights be terminated, based in part on Mother's insufficient progress in working her case plan. At the termination hearing, Cabinet worker Brittany Love testified regarding Mother's progress. In the course of her testimony, Love related Mother had enrolled in an IOP at Primary Care Centers of Eastern Kentucky (Primary Care) in February of 2024, but was discharged shortly thereafter due to

---

[1] Child's putative father has not appealed the circuit court's order, which also terminated his parental rights to Child.

noncompliance, as Mother missed five days in a row. Mother objected to Love's statement on grounds of failure to establish a proper foundation, contending that unless there was some record, Love's statement was "just hearsay." V.R.[2] 4/5/24 9:57:10.

The Cabinet countered that Love was merely relying on the Cabinet's "business records" with respect to her statement Mother had been discharged from her IOP at Primary Care due to noncompliance. Love explained she would have received that information in a phone call or Zoom meeting and would have documented it. Mother renewed her objection, contending the Cabinet could not rely on the business records exception to hearsay as no "physical document" had been admitted, and further contending that even if there was a business record, there was "still a second layer of hearsay there," as Love received the information from a party not present to testify. V.R. 4/5/24 10:10:00. Mother moved to strike Love's statement Mother had been discharged due to noncompliance. V.R. 4/5/24 10:01:30. The Cabinet moved to admit its records. When the circuit court queried Mother's counsel as to whether Mother objected, counsel started, "I'll renew my . . . " but then stated "no objection." V.R. 4/5/24 10:02:00. Love continued her testimony regarding Mother's discharge from the IOP at Primary

---

[2] Video Record.

Care and went on to testify that Mother subsequently enrolled in an IOP at Mountain Comprehensive Care Center (Mountain Comp).

The Cabinet's records admitted as an exhibit include "Service Recordings." An entry from February 19, 2024, reflects Love documented being "informed that [Mother] still has not started IOP and at this time will be discharged due to noncompliance – due to missing 5 days in a row." Petitioner's Ex. 7, "Service Recordings" at 21.

In concluding Mother had shown insufficient progress in working her case plan, the circuit court described Mother repeatedly failing drug screens and Mother's inconsistent visitation with Child. The circuit court reached this conclusion even accepting Mother's contention "she had enrolled in an IOP with Mountain Comp . . . after the initial assessment for Primary Care's program showed that she would have been required to pay out of pocket for that program." R.[3] at 170. The circuit court reasoned:

> While [Mother] has shown some progress on her case plan, most of it has only come within the last few months, despite the child being in care for over three and a half years, which represent almost all her life. Even after this length of time, [Mother] has not shown a significant likelihood that she will be able to care and provide for the child in the foreseeable future.

---

[3] Record.

*Id.* Mother contends her progress was sufficient to preclude termination of her parental rights to Child.

## STANDARD OF REVIEW

A circuit court may terminate parental rights pursuant to KRS[4] 625.090. Of particular relevance to the matter *sub judice*, a circuit court may only terminate parental rights if "[t]ermination would be in the best interest of the child." KRS 625.090(1)(c). In making the best interest determination, a circuit court is required to consider those factors listed in KRS 625.090(3), including KRS 625.090(3)(d): "The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child."

A circuit court "has wide discretion in terminating parental rights." *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014). We undertake review pursuant to a "clearly erroneous standard which focuses on whether the [circuit] court's order of termination was based on clear and convincing evidence." *Id.* Reviewing for clear error, we are "obligated to give a great deal of deference to the [circuit] court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support

---

[4] Kentucky Revised Statutes.

them." *Id.* As is well-established, "[c]lear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 117 (Ky. App. 1998). A circuit court's assessment of evidence as clear and convincing is tested for an abuse of discretion. *A.F. v. L.B.*, 572 S.W.3d 64, 75 (Ky. App. 2019).

## ANALYSIS

Mother alleges two errors on appeal. First, Mother contends the circuit court erred in admitting Cabinet records allegedly containing "double hearsay." Second, Mother contends the circuit court erred in concluding termination is in Child's best interest, alleging the circuit court failed to give due consideration to Mother's "substantial improvement" and Child's age. We reject both arguments.

**I.       The circuit court's admission of Cabinet records.**

Mother concedes "records of a regularly recorded business activity may be admissible as an exception to the hearsay rule" pursuant to KRE[5] 803(6). Appellant's Br. at 5. Mother nonetheless contends, "The [C]abinet records admitted into evidence in this case were plainly double hearsay and should not

---

[5] Kentucky Rules of Evidence.

have been admitted or referenced to." *Id.* at 6. Mother directs us to KRE 805 and *Prater v. Cabinet for Human Resources, Commonwealth of Ky.*, 954 S.W.2d 954, 956 (Ky. 1997), to support her contention.

To begin, we question whether Mother has properly preserved this issue. Mother objected to Love's testimony on grounds of failure to establish a proper foundation and hearsay. She subsequently renewed her objection and moved to strike Love's statement Mother had been discharged from her IOP at Primary Care due to noncompliance. However, after the Cabinet moved to admit its records as an exhibit, the circuit court queried Mother's counsel as to whether Mother objected, and the record reflects Mother's counsel started to renew Mother's objection, but then relented and stated "no objection."

For its part, the Cabinet does not contest Mother's preservation, but does point out that before the circuit court, Mother objected only to Love's statement Mother had been discharged from her IOP at Primary Care due to noncompliance. The Cabinet faults Mother's brief for furnishing "a much more general, blanket objection than her argument to the [circuit] court." Appellee's Br. at 7. Of course, "Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017). As the Cabinet does not contest Mother's preservation of this issue, we undertake review, but we limit our

review to consideration of the specific statement Mother objected to at the termination hearing.[6]

Mother objected to Love's statement Mother had been discharged from her IOP at Primary Care due to noncompliance, which Love derived from the Cabinet's records. As the Cabinet points out, the circuit court did not actually rely on that statement in making its best interest determination, but rather accepted Mother's contention regarding the circumstances of her discharge, that Mother "had enrolled in an IOP with Mountain Comp . . . after the initial assessment for Primary Care's program showed that she would have been required to pay out of pocket for that program." R. at 170. Mother's reliance on *Prater* is therefore misplaced, as that case makes clear: "Admission of incompetent evidence in a bench trial can be viewed as harmless error . . . if the trial judge did not base his decision on that evidence[.]" *Prater*, 954 S.W.2d at 959 (emphasis deleted). As Love's statement appears to have played no role in the circuit court's best interest determination, any error pertaining to admission of the Cabinet's records, from which Love's statement was derived, is harmless.

---

[6] Even were we inclined to undertake a more far-reaching review of the circuit court's admission of the Cabinet's records, as the Cabinet observes, Mother's brief fails to identify specific instances of "double hearsay" in those records or explain how the circuit court's findings reflect reliance on any such "double hearsay." As discussed herein, error which does not impact the outcome is harmless error.

**II.** **The circuit court's best interest determination.**

Mother argues the circuit court erred in making its best interest determination, in particular in its consideration of KRS 625.090(3)(d): "The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child." Mother contends she made "significant adjustments and efforts," that evidence of such was "overwhelming," and she faults the circuit court for reducing "her progress to barely a paragraph of boilerplate language from the statute." Appellant's Br. at 8. Mother also contends the circuit court failed to consider Child's age.

Mother does not allege errant factual findings, but instead takes issue with the circuit court's weighing of facts, arguing the circuit court gave short shrift to her progress and Child's age. Had the circuit court simply ignored all evidence of Mother's progress and declined any consideration of Child's age, we might well be confronted with an abuse of discretion. But the circuit court specifically explained why it placed little weight on Mother's progress, detailing a lengthy history of failed drug screens and inconsistent visitation with Child against merely "some progress" that had "only come within the last few months," despite Child being removed from Mother's care "for over three and a half years . . . almost all

of [Child's] life." Mother does not contest the circuit court's finding that her progress had "only come within the last few months."

The circuit court discounted but did not ignore Mother's progress. And contrary to Mother's assertion the circuit court failed to consider Child's age, the circuit court specifically cited Child's age in discounting her progress. The circuit court essentially found Mother's progress belated given Child's age. Mother acknowledges she "took *years* to get on the right track." Appellant's Br. at 9 (emphasis added). The circuit court did not abuse its discretion in its weighing of months against years. Mother's recent progress is commendable, and Mother may well feel the circuit court erred in discounting that progress, but the circuit court's task was to determine the best interest of Child, whose best interest Mother discounted for the bulk of those years.

## CONCLUSION

Based on the foregoing, the Perry Circuit Court's May 8, 2024 order terminating Mother's parental rights to Child are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ryan Mosley
Hindman, Kentucky

BRIEF FOR APPELLEE THE COMMONWEALTH OF KENTUCKY AND THE CABINET FOR HEALTH & FAMILY SERVICES:

Kevin Martz
Covington, Kentucky