Barry Lewis THOMAS and his wife, Elizabeth Carol Thomas, Appellants,

v.

CABINET FOR FAMILIES & CHILDREN Appellees.

No. 1999–SC–0589–DG.

Supreme Court of Kentucky.

Sept. 27, 2001.

Mitchell A. Charney, Stephanie L. Morgan–White, Goldberg & Simpson, P.S.C., Louisville, Counsel for Appellants.

Mona S. Womack, Assistant Counsel, Cabinet for Families and Children, Office of the Counsel, Owensboro, Counsel for Appellee.

STUMBO, Justice.

Removing children from their birth parents is always a decision fraught with high emotion. Deciding with whom to place the children after termination of parental rights can be just as challenging. This case comes to us from a decision of the Court of Appeals affirming the Grayson Circuit Court's dismissal of an action against the Cabinet for Families and Children. After much deliberation, we now affirm the Court of Appeals.

Barry and Elizabeth Thomas agreed to adopt two siblings, Moe and Rachel. The rights of the siblings' parents had been terminated, and they were living in the foster home of Deborah DeWeese. Before they were placed with the Thomases, however, their little sister Maggie was born. Maggie was immediately placed in the same foster home as her older siblings. Approximately seven months later, on September 16, 1995, Moe and Rachel were moved to the Thomases' home. Though the Thomases had expressed a desire to adopt all three children, Maggie remained with DeWeese because of a delay in the termination of parental rights (TPR) case against her mother. In the meantime, the Cabinet assured the Thomases that they would be able to adopt Maggie in order to keep all three siblings together.

In July 1996, the Thomases learned that DeWeese had voiced an interest in adopting Maggie. Also, in the same month, Sandra Lynn, a Family Service Office Supervisor, Beverly Toon, a Family Service Worker, and Donna Harmon, a Family Service District Manager, filed a memorandum with Dennis Corrigan, the Division Director, suggesting that Maggie should stay with DeWeese, and recommending separation of the sibling group. The recommendation was based on the bond between Maggie and DeWeese which had developed over the sixteen-month stay in

her home. The Thomases filed a complaint with the Quality Assurance Branch of the Department for Social Services on July 22, 1996, asserting that they had been assured they would be able to adopt Maggie. The complaint was found to be valid, and the Thomases were notified in a letter from Dolores Delahanty on October 11, 1996, that the decision to separate the children was unreasonable. As a result, said Delahanty, the Thomases would be contacted to discuss the procedure of placing Maggie in their home. The Thomases also received a letter from Dennis Corrigan, the Director of Family Services, on February 25, 1997, informing them that the request to separate the children was being denied as it was in the best interest of all three children not to be separated. The letter went on to inform the Thomases that an adoptive referral would be made to their home, and Corrigan expressed his hope that they could all work to make a smooth transition for Maggie from DeWeese's home to theirs.

Soon thereafter, DeWeese requested further review by the Commissioner. In the meantime, Donna Harmon, who had been the Family Service District Manager who approved the original decision to separate the siblings, was appointed to the position of Commissioner. Therefore, she would be the person reviewing Director Corrigan's decision which had reversed the decision she had made while serving as the Family Service District Manager. The Thomases wrote a letter to Harmon, expressing their belief that it would be unethical for her to review this decision. Despite this complaint, Commissioner Harmon did review the case, and reversed Director Corrigan's decision. She sent a letter to the Thomases informing them that Maggie would not be placed in their home. She made no mention of their ability to appeal her decision.

Unsure of how to proceed, the Thomases, through their attorney, contacted the Secretary of the Cabinet for Families and Children. The Secretary referred the matter to the Cabinet's Deputy Counsel, Ryan M. Halloran. Halloran replied to the Thomases on April 30, 1997, explaining that the decision for Maggie to remain with DeWeese was based on a psychiatric consultation with Allen J. Brenzel, M.D. Nowhere in his letter did he mention any right of appeal.

The Thomases then learned that DeWeese had filed a Petition to adopt Maggie in the McCracken Circuit Court. They attempted to intervene on behalf of Moe and Rachel. The McCracken Circuit Court held DeWeese's adoption of Maggie in abeyance until the Thomas' could seek relief in the appropriate court.

Therefore, on September 9, 1997, the Thomases filed a Verified Complaint and Petition for Judicial Review in Grayson Circuit Court. They alleged that the Cabinet's administrative decision was arbitrary and capricious, and made in violation of the Cabinet's own policies and procedures. They also alleged that the Cabinet had violated several of their constitutional rights. Further, they argued that they should have been given an enlargement of time to file this appeal, as they were not given notice by the Cabinet of their right to appeal. The court ordered all issues briefed, and the Cabinet filed a motion to dismiss, arguing that the Thomases had no standing to petition for judicial review. The Grayson Circuit Court granted the Cabinet's motion to dismiss, claiming the Thomases had no right to appeal, and their motion for enlargement of time to bring the appeal was therefore moot. The Thomases appealed to the Court of Appeals, and that court, while sympathetic to the Thomases, affirmed the Grayson Circuit Court. We accepted discretionary re-

view in order to answer the question of whether there is a right to judicial review of the Cabinet's placement decisions when the children have been previously committed to the Cabinet.

Appellants argue that 905 KAR 1:010(18)[1] gives them a right to appeal the Cabinet's decision to place Maggie with DeWeese. 905 KAR 1:010(18) reads as follows:

> Section 18. Upon completion of the investigation of the proposed placement, the applicants shall be notified by registered or certified mail of the decision of the Secretary of the Cabinet for [Families and Children] or his designee, either granting or denying permission for the placement or receiving of the child. If the permission is granted, the child may be placed in the home of the receiving parents forthwith, if other requirements, including the requirements of the Interstate Compact on the Placement of Children, if applicable, have been met. If the permission is denied, the receiving parents or the birth parents may, within ten (10) days after notice of denial, appeal the decision to the circuit court of the county in which the adoption is proposed.

This Administrative Regulation is related to KRS 199.473 which is entitled "Placement of children by private person; temporary custody; removal." Appellants concede the fact that this statute clearly does not apply to them, as it was meant to govern private adoptions. Since Maggie's natural parents have had their parental rights terminated, this statute grants the Thomases no rights whatsoever. This theory was further enunciated in *Department for Human Resources v. R.G.*, Ky., 664 S.W.2d 519, 521 (1984) which held that KRS 199.473 "does not pertain to adoption of children whose parental rights have been previously terminated . . . ." In that opinion, this Court noted that "[t]he Department has had a long practice of utilizing the procedures provided for in 905 KAR 1:010 for children who had been committed to the Department for reasons of abuse, neglect, abandonment, etc." *Id.* Following that reasoning, Appellants believe that 905 KAR 1:010, the administrative regulation, gives them a statutory right to appeal, since "[a]dministrative regulations of any kind which have been duly adopted and properly filed have the full effect of law." *Flying J Travel Plaza v. Commonwealth,* Ky., 928 S.W.2d 344, 347 (1996).

Though we do not deny that, if applicable, this regulation should be given the full effect of the law, we believe the history of this regulation shows its inapplicability to the situation at hand. In 1992, eight years after *Department for Human Resources v. R.G.* was decided, the Cabinet added Section 6 to 905 KAR 1:010 which reads as follows, "Section 6. An application for permission to place or receive a child shall not be processed if, prior to the receipt of the application, the child was committed to the Cabinet for Families and Children by order of the district or circuit court." We believe this section makes it hauntingly clear that the Cabinet intended to override *Department for Human Resources v. R.G.* and discontinue its practice of using the regulation for adoptions of children who have had their parental rights terminated. We therefore find that this regulation was not applicable in the case at bar. Even if the statute did apply, the Thomases clearly

---

1. 905 KAR 1:010(18) has been renumbered. In the current administrative regulations, it is 922 KAR 1:010(18). The only substantive change in the newly numbered regulation is the name of the Cabinet. The agency was formerly called the Cabinet for Human Resources, and has since been re-named the Cabinet for Families and Children.

did not file a timely appeal. They argue that their motion for enlargement of time should have been adjudicated on the merits. However, we believe the motion was moot, as the regulation clearly does not apply to the Thomases.

Though the regulation cited does not provide the Thomases with a right to appeal the decision of the Cabinet, the inquiry does not end there. KRS 13B.140 also gives a party a right to judicial review of any administrative order. The parties did not brief this issue, although it was mentioned in the proceedings in the Grayson Circuit Court, both in the Cabinet's Motion to Dismiss and the Circuit Court's opinion. This statute was also discussed at oral argument in this Court, and we find it relevant.[2] The statute reads as follows:

(1) All final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. If venue for appeal is not stated in the enabling statutes, a party may appeal to Franklin Circuit Court or the Circuit Court of the county in which the appealing party resides or operates a place of business. Copies of the petition shall be served by the petitioner upon the agency and all parties of record. The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and a statement of the grounds on which the review

is requested. The petition shall be accompanied by a copy of the final order. KRS 13B.140(1).

In the case at bar, the Thomases met most of the requirements of the statute. They filed a petition for judicial review in the Grayson Circuit Court, which is the circuit in which the Thomases, the appealing party, reside. Further, the petition included all the relevant information required, such as the names and addresses of the parties and a statement of the grounds on which the review was requested. However, there are two issues which are not so clear. First is the timeliness of the appeal. The letter from Donna Harmon informing the Thomases that Maggie was not to be placed in their home was sent on March 14, 1997, and the petition for judicial review was filed on September 8, 1997, nearly seven months later. If we set the time of the final order as the correspondence from Ryan Halloran on April 30, 1997, and then allotted more time for the Thomases to receive it, and pushed it back to May 5, 1997, there is still a four-month time span in which an appeal was not filed. The statute only allows an aggrieved party thirty (30) days to appeal. Clearly, even if the appeal was permitted under the statute, it was not timely-filed. Appellants filed a motion for enlargement of time in the circuit court, but the motion has never been ruled upon. We now deny that motion. CR 6.02 dictates that any motion for enlargement should be made before the "expiration of the period originally prescribed." Appellants, however, filed the motion seven months after the expiration of the thirty days they had in which to appeal. Subsection (b) of CR

---

2. In contradiction to the Cabinet's Motion to Dismiss and the Grayson Circuit Court opinion, counsel for the Cabinet conceded at oral argument in this Court that KRS 13B applies to the situation at hand. Counsel for the Cabinet argued that if we held Appellants had

a right to appeal under 905 KAR 1:010, they would then have two avenues of appeal, 905 KAR 1:010 and KRS 13B. Since we have determined that 905 KAR 1:010 does not apply to the Thomases, there is no fear of multiple appeals.

6.02 allows motions to be made after the expiration of the original period; however, it specifically exempts an enlargement of time for action under CR 73.02, which is the rule governing notice of appeal. As a result, we have no choice but to deny Appellants' Motion for Enlargement of Time. Appellants argue that we should grant the enlargement because they were given no notice by the Cabinet of their right to appeal. However, we find no duty on the part of the Cabinet to inform Appellants of this right.

The last question to be answered, therefore, is whether the Thomases were truly appealing a "final order of an agency." According to the definitions of KRS 13B.010, a final order is "the whole or part of the final disposition of an administrative hearing, whenever made effective by an agency head, whether affirmative, negative, injunctive, declaratory, agreed, or imperative in form." KRS 13B.010(6). An administrative hearing is "any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person." KRS 13B.010(2).

█ We are confident the Thomases would argue, and we agree, that the Thomases' act of filing a complaint with the Quality Assurance Branch constituted the initiation of an administrative hearing, and Commissioner Harmon's letter to them detailing her final decision to allow DeWeese to adopt Maggie was a final order of the agency. The Quality Assurance Branch proceeding was conducted by the Cabinet ("an agency") and is permitted by Policies 400–405.6 of the Department for Social Services Program Manual ("an administrative regulation") which adjudicated the issue of the adoption of Maggie ("legal rights") of the Thomases. Further, counsel for the Cabinet conceded this point at oral argument. Her only objection to the Thomases' right to appeal to the Circuit Court under KRS 13B was that the Thomases did not timely file their petition for review. We therefore hold that KRS 13B.140 gives a person who has filed a complaint with the Quality Assurance Branch of the Cabinet for Families and Children a right to appeal an adverse decision to either the Franklin Circuit Court, or the court in which the appealing party resides.

We do not address Appellants' constitutional argument because we find it to be without merit.

The holding of the Kentucky Court of Appeals is hereby affirmed so far as it is consistent with the opinion herewith, and the petition for judicial review is dismissed for lack of timeliness.

LAMBERT, C.J.; COOPER and JOHNSTONE, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

KELLER, J., concurs by separate opinion, with GRAVES, J., joining that opinion.

KELLER, Justice, concurring.

I agree with the majority's ultimate conclusion that the trial court properly dismissed the Thomas's ("Appellants") action against the Cabinet for Families and Children ("Cabinet"). I break ranks with the majority, however, because I find the untimeliness of Appellants' pleading irrelevant to my conclusion. I would instead hold—as the Court of Appeals did—that Appellants have no standing to seek judicial review because, in the words of the Court of Appeals, "there is no right to appeal [the Cabinet's] decision in a case such as this."

While the majority correctly explains that neither KRS 199.473 nor 905 KAR 1:010(18) give Appellants a right to appeal the Cabinet's decision because those provisions govern only private adoptions, I believe the majority errs when it concludes that KRS 13B.140 gives Appellants standing to appeal. In my opinion, the majority's characterization of the adverse determination in this case as a "final order of an agency"[1] requires it to manipulate a square peg through a round hole. I believe the trial court properly concluded that KRS 13B.140 does not provide Appellants with a right to appeal, and, as I cannot improve upon the trial court's logic, I rely upon Judge Samuel Monarch's explanation:

> KRS 13B, Administrative Hearings, does not govern these proceedings because the administrative decision-making process was not, and was not required to be, a formal adjudicatory proceeding. Now, under Kentucky case law, adjudicatory decision made by either a legislative body, such as a fiscal court, *Pierson Trapp Comp. v. Peak*, Ky., 340 S.W.2d 456, 457 (1960) (zoning map changes), or a quasi-judicial administrative decisionmaker, *Gentry v. Ressnier*, Ky., 437 S.W.2d 756 (1969) (Board of Zoning Adjustment), are subject to review for arbitrariness, regardless of whether there is an explicit right of appeal [because] an agency is prohibited by Section 2 of the Kentucky Constitution from acting arbitrarily. Action in excess of statutorily granted powers, lack of procedural due process and lack of substantial evidence supporting the decision define the scope of judicial review in such a case. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,*

Ky., 379 S.W.2d 450, 456 (1964). More generally, there is an inherent right of appeal from adjudicative orders of administrative agencies when constitutional rights are involved. *Id.*

An adjudicatory decision, which requires due process, is one which determines the rights, interests or duties of an individual, on the basis of particular facts relevant to the circumstances of that individual. *Trimble Fiscal Court v. Snyder,* Ky.App., 866 S.W.2d 124, 126 (1993). In order for an individual to be entitled to an adjudicatory hearing on a matter, he or she must have standing to bring the suit. Thus the Thomas's must have a "judicially cognizable interest in the subject matter of the suit." *City of Ashland v. Ashland F.O.P. # 3, Inc.,* Ky., 888 S.W.2d 667, 668 (1994). The interest must be a present and substantial interest as distinguished from a mere expectancy. *Id.* "A Plaintiff must have a real, direct, present and substantial right or interest in the subject matter of the controversy." *Housing Authority of Louisville v. Service Employees International Union, Local 557,* Ky., 885 S.W.2d 692, 695 (1994). The issue must be decided on the facts of each case. *City of Ashland, supra* at 668.

Now, in regards to an *adoption* petition, a court may overrule the recommendation of the [Cabinet] not to allow an adoption if that permission was arbitrarily or unreasonably withheld. *Commonwealth Department of Child Welfare v. Jarboe,* Ky., 464 S.W.2d 287, 291 (1971). However, the prerequisite to being able to file an adoption petition at all is the placement of the child in the adoptive parents' home. Furthermore, regulations only provide a remedy for

---

1. KRS 13B.140(1).

the [Cabinet's] refusal to place a child in the case of private adoptions. Under the relevant policy statements in the Program Guide, which have the effect of regulations, the applicant, at least pre-placement, clearly has no procedural rights and no substantive legal interest in the subject matter of the proceeding. [Footnote: Custody or some type of placement is necessary for standing. *See Williams v. Phelps*, Ky.App., 961 S.W.2d 40, 42 (1998). *See also Roark v. Yarbrough*, Ky., 411 S.W.2d 916, 919 (1966).] The Petitioners merely had a right to complain and to get an answer. They had only an expectancy, not any vested right or interest in the adoption. Effectively, they had no more real legal interest in the child than any other "approved" adoptive parent. In effect, the "best interests of the child" are so paramount that when a child is in their custody the [Cabinet] is given the leeway to change its mind completely at least up to the time of placement without having to answer to the adoptive parent outside the administrative complaint process.

I believe that Appellants had no standing to appeal the Cabinet's determination, and I would affirm the Court of Appeals on that basis.

GRAVES, J., joins this concurring opinion.