**Finley Michael JORDAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee (Two Cases).**

Nos. 1998–SC–0856–MR, 2000–SC–0700–TG.

Supreme Court of Kentucky.

April 25, 2002.

David T. Eucker, Assistant Public Advocate, Frankfort, Irvin Halbleib, Jr., Louisville, for appellant.

A.B. Chandler, III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Frankfort, for appellee.

## MEMORANDUM OPINION OF THE COURT

### I. INTRODUCTION

A Lewis Circuit Court jury convicted Appellant of First–Degree Rape of a child under twelve (12) years of age (a Class A felony) and recommended the maximum sentence of life imprisonment. On October 2, 1998, the trial court entered judgment in accordance with the jury's recommendation, and Appellant appeals from this judgment as a matter of right[1] in

---

1. Ky.Const. § 110(2)(b).

1998–SC–0856–MR. Approximately thirteen (13) months later, on November 16, 1999, the trial court entered an amended judgment identical to the original judgment except that it also ordered:

The Defendant, pursuant to KRS 532.043, shall be sentenced to three (3) years of conditional discharge following his release from incarceration upon expiration of sentence, subject to all orders specified by the Department of Corrections and all other applicable provisions of KRS 532.043.

Appellant initially appealed the amended judgment to the Kentucky Court of Appeals but subsequently moved for—and the Court of Appeals recommended—transfer to this Court, which has exclusive jurisdiction over "[a]ppeals from a judgment of the Circuit Court imposing a sentence of ... imprisonment for twenty years or more." [2] We granted transfer, and in 2000–SC–0700–TG we address Appellant's challenge to the amended judgment.

## II. BACKGROUND

In February of 1997, the Lewis County Grand Jury issued a one (1) count indictment against Appellant charging him with engaging in sexual intercourse with his nine (9) year-old stepdaughter:

The Grand Jury charges: That on or about the period between May—June 1991, in Lewis County, Kentucky, the above named defendant: unlawfully committed the offense of RAPE, FIRST DEGREE, KRS 510,040, CLASS A FELONY ... when he had sexual intercourse with D.W., a person then less than twelve years of age.

At trial, the primary evidence for the Commonwealth came from the complaining witness, D.W., then seventeen (17) years of age. D.W. testified that: (1) in the summer months of 1991, she was nine (9) years old and lived with her mother and Appellant, her stepfather, in a trailer on Trace Creek in Lewis County, Kentucky; (2) on the morning in question, her mother was at work, and she woke up and went into the living room/parents' bedroom where Appellant was watching television; (3) when she laid down on the bed to watch television, Appellant put his foot up her shirt, and when she attempted to run away, Appellant followed her, pulled her down on D.W.'s own bed and then, despite D.W.'s attempts to fight him off, got on top of her, inserted his penis in her vagina and forced her to have sexual intercourse with him; (4) the incident left her bloody and bruised and Appellant ordered her to clean up the mess, which she did; (5) she then ran to her step-grandmother's residence and phoned her mother, but did not tell either her mother or her step-grandmother about the rape because she did not expect them to believe her; (6) in 1996, approximately five (5) years after the incident, she reported the incident to an aunt and uncle with whom she was then residing; (6) her aunt reported the incident to social services, and D.W. spoke with Pam Botts, a social worker, and Trooper Brian Bowling of the Kentucky State Police regarding the allegation.

Botts and Trooper Bowling interviewed Appellant and his wife the day after D.W. reported the incident, and each of them testified at trial that Appellant stated to Botts during the interview, "Pam, I always knew you would get me" and, although Appellant denied having sexual intercourse with D.W., he admitted that, on three or four different occasions, D.W. came into his room, climbed on top of him, and rubbed on his penis, but that he stopped things before he ejaculated. Botts further

2. *Id.*

testified that Appellant appeared hostile during the interview and that Appellant appeared uncomfortable with her presence because of her previous involvement in an investigation of an allegation of sexual abuse against D.W. by Appellant's father.

Appellant testified in his own defense at trial and denied D.W.'s allegations. Appellant further testified that: (1) he told Trooper Bowling and Botts that D.W. had rubbed his penis because Trooper Bowling told him that he would arrest him unless he admitted to something; (2) D.W.'s version of events was impossible because, while the family did have a television at the relevant time, it did not have cable, an antenna, or a VCR, and thus no one could watch television; (3) because of a childhood accident, he suffered from an erectile dysfunction which prevented him from sustaining an erection; and (4) D.W. had a motive to lie at the time she raised these allegations because the family was preparing to move away from a location where D.W. had developed a romantic relationship.

In his defense, Appellant also emphasized alleged inconsistencies and vagueness in D.W.'s version of the events. During cross-examination, Appellant suggested reasonable doubt because of: (1) D.W.'s lack of specificity regarding the timing of this alleged incident; (2) D.W.'s inconsistent statements or lack of memory concerning the position of herself and Appellant at the time of the rape, whether Appellant removed all of her clothing, whether Appellant tore her panties, whether Appellant ejaculated, whether Appellant threatened to kill her, and whether Appellant gave her a black eye.

Appellant's wife (D.W.'s mother) testified during the Commonwealth's case-in-chief, but her testimony primarily supported her husband's defense. She verified that: (1) D.W. had a motive to invent this allegation against Appellant; (2) Appellant suffered from a form of erectile dysfunction; (3) Appellant told her after the interview with Botts and Trooper Bowling that he made up the penis rubbing stories because he would have gone to jail if he had not told them something. In addition, Appellant's wife testified that: (1) she assisted with D.W.'s bathing during this period of time, and she never observed any of the physical injuries D.W. described; (2) D.W. had a poor reputation for truthfulness; and (3) that D.W. had partially recanted her allegations on prior occasions and suggested that Botts was "telling her what to say."

The defendant also introduced testimony from a number of other witnesses who knew both D.W. and Appellant. These witnesses testified regarding D.W.'s poor reputation for truthfulness (and some specifically referenced D.W.'s prior accusation of sexual abuse against Appellant's father for which no charges were brought) and explained that they observed interaction between D.W. and Appellant and never saw any indications of · estrangement. Some of these witnesses testified regarding their close relationship with D.W. and explained that D.W. never made any allegations to them concerning sexual abuse at the hands of Appellant.

Following the presentation of evidence, the jury found Appellant guilty of the indicted offense and recommended the maximum penalty of life imprisonment. The trial court entered judgment in accordance with this recommendation. In 1998–SC–0856–MR, Appellant appeals from the original judgment and raises nine (9) separate allegations of trial error. Because we find that the trial court committed reversible error by allowing the introduction of inadmissible and prejudicial evidence that D.W.'s prior allegation of sexual abuse was "substantiated," we address only those al-

legations of error likely to occur upon remand.[3] As our resolution of the issues presented in Appellant's matter-of-right appeal from his original judgment of conviction render moot the issues Appellant presents in 2000–SC–0700–MR as to the amended judgment imposing a three (3) year period of conditional discharge, we do not reach the merits of that matter.[4]

## III. ALLEGATIONS OF TRIAL ERROR

### A. FAILURE TO GRANT A DIRECTED VERDICT OF ACQUITTAL

■ Appellant maintains that the trial court erred when it denied his motion for a directed verdict of acquittal and submits that the Commonwealth's evidence at trial—specifically, the testimony of D.W.—was so unbelievable that it must be rejected as a matter of law. This Court reviews such allegations of error under the standard articulated in *Commonwealth v. Benham:*[5]

> On motion for directed verdict, the trial court must draw all fair and reasonable inference from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed

verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.[6]

After reviewing the evidence under this standard, we find this allegation of error without merit. A defendant is guilty of First Degree Rape if "[h]e engages in sexual intercourse with another person who is incapable of consent because he ... [i]s less than twelve (12) years old"[7] and D.W.'s testimony unquestionably permitted a jury to find that Appellant had committed First Degree Rape. At trial, Appellant presented to the jury the same evidence that he now argues supports his allegation that D.W.'s testimony was "unbelievable as a matter of law," and the jury had an opportunity to examine D.W.'s credibility in light of that evidence. After considering the evidence as a whole, we do not find the jury's guilty verdict unreasonable, and we find that the trial court prop-

---

3. Specifically, we do not address the allegations of error concerning: (1) the Commonwealth's (mis)conduct during opening statement, cross-examination, and closing argument (Argument II, Supplemental Argument); (2) the nature and form of the examination of witnesses permitted by the trial court (Arguments III, VI, and VIII); (3) allegedly improper limitations on the defense's closing argument (Argument IV); and (4) the trial court's failure to grant a mistrial (Argument VII).

4. Because we are remanding this case for a new trial, however, we recognize that the trial court may wish to consider *Purvis v. Com-*

*monwealth,* Ky., 14 S.W.3d 21 (2000) and *Lozier v. Commonwealth,* Ky.App., 32 S.W.3d 511 (2000).

5. Ky., 816 S.W.2d 186 (1991).

6. *Id.* at 187. *See also Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3, 4–5 (1983) ("The clearly unreasonable test seems to be a higher standard for granting a directed verdict ... constitut[ing] an appellate standard of review."); *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530, 533 (1977).

7. KRS 510.040(1)(b).

erly denied Appellant's motion for a directed verdict of acquittal.

## B. INTRODUCTION OF COMMONWEALTH'S EXHIBIT # 4

■ In an effort to rebut the defense's allegation that D.W.'s testimony was untrustworthy because she had previously made a false allegation of sexual abuse against Appellant's father, the Commonwealth introduced testimony concerning a three (3) page Department for Social Services Initial Child Abuse/Neglect/Dependency Investigation Form (identified at trial as a Form DSS–150). The DSS–150 form contained the Department of Social Services's findings concerning D.W.'s July 1993 allegation that she had been sexually abused by Appellant's father. The first page of the form identifies D.W. by name, date of birth, sex, race, and social security number. Above that information, the type and status of the investigation is identified as "Sexual Abuse" and "Substantiated." [8] The second page of the form identifies the alleged perpetrator by name, age, sex, race, relationship to the victim, and the nature of the allegation. The third page of the form: (1) identifies the source of the initial report as "medical personnel"; (2) notes the fact that DSS has an "already

active" case under D.W.'s mother's name; (3) lists "inadequate housing conditions" and "parental history of abuse or neglect as child" as "Factors Present"; (4) indicates "fondling" under "Conditions Found"; (5) indicates "individual social work counseling," "family counseling," and "parent education, child management counseling" as "Services To Be Provided To Family"; and (6) indicates under "Legal Action" that "temporary custody given in order to interview child." [9] The document was signed at the bottom of the third page by both a case worker and the Family Services Office Supervisor. Above those signatures, the document reads:

> The findings of this investigation are not a judicial determination, but are a professional determination based on Departmental policy and procedure.

Over Appellant's objections, the Commonwealth used the DSS–150 form during its cross-examination of certain defense witnesses to contradict testimony that D.W. had previously made a false allegation [10] and, during its rebuttal phase, called Botts to the stand to testify to the contents of the DSS–150 form and to lay a foundation for its introduction as a court exhibit:

Comm.: I will hand you Commonwealth's Exhibit CW4—Common-

---

**8.** The DSS–150 form provides five options with regard to "status": (1) Substantiated; (2) Found & Substantiated; (3) Some Indication; (4) Unsubstantiated; (5) Unable to Locate. Here, the preparer had marked an "x" next to the first option.

**9.** The options under "Legal Action" include: (1) None, (2) Petition filed in juvenile court; (3) Removal of child; (4) Criminal action against perpetrator; and (5) Other. Here, the preparer marked an "x" next to the fifth option.

**10.** In fact, at one point during its cross-examination of D.W.'s step-grandmother (the spouse of the alleged perpetrator identified on

the DSS–150), the Commonwealth successfully moved the trial court to admit the form as Commonwealth's Exhibit 4. The trial court apparently reconsidered this ruling at a later time. During discussions outside the presence of the jury, the trial court stated: "I think it is proper rebuttal, and I previously ruled that it can—that you can authenticate it with Pam Box [sic] who is this witness, but I would not allow it ... into admission for the Jury to see." The trial court later explained his rationale for that ruling: "I am just afraid at this point that since it substantiates an allegation of sexual abuse on somebody else— I just think that that outweighs—you know, the prejudicial effect would outweigh the probative value of it."

wealth's Exhibit 4 and ask you if you recognize those pages.

Botts:  Yes, I do.

Comm.:  I believe you told this Jury on Tuesday that you were a social worker or case worker with the local Department for Social Services?

Botts:  Yes, I did.

Comm:  What is that document?

Botts:  This is a DSS 150.

Comm:  What is that used for?

Botts:  This is the findings that are recorded after an investigation. This was in 1993.

Comm.:  It has been used in this case to question the testimony of [D.W.'s mother] and the Defendant and the other, Margaret Jordan. First, is that a true and accurate photocopy of the original document Form 150?

Botts:  Yes, it is.

Comm.:  Where is the original Form 150 kept?

Botts:  It's kept at our local office in Lewis County.

Comm.:  Here in Vanceburg?

Botts:  Yes.

Comm:  And, is it kept—is this document made and kept in the regular course of business?

Botts:  Yes, it is.

Comm:  And, both by knowing the— reviewing the document as well as your personal knowledge—you have personal knowledge of the facts set out in the document concerning the investigation and findings by the Cabinet?

Botts:  Yes, I do.

Comm:  And, this is marked in—in the typing there under sexual abuse was it substantiated or unsubstantiated?

Botts:  It was substantiated.

Comm:  And, when was the date and time of the initial investigation?

Botts:  8/2/93 at 1:15 p.m.

Comm.:  And it involved which child?

Botts:  [D.W.]

Comm.:  And it involved what alleged perpetrator?

Botts:  Finley Jordan.

Comm.:  Age?

Botts:  Sixty.

Comm:  Relationship to the victim?

Botts:  Step-grandparent.

In its brief, the Commonwealth makes no credible attempt to defend the trial court's admission of testimony concerning the contents of the DSS–150 form. We find this unsurprising because, as this Court held in *Prater v. Cabinet for Human Resources*,[11] such records are hearsay that cannot be admitted as a public record or report under KRE 803(8),[12] can only be admitted as a record of regularly conducted activity under KRE 803(6) if that provision's more stringent foundation requirements are met,[13] and "even if a public agency's investigative report satisfies the foundation requirements of KRE 803(6), that does not authorize a carte blanche admission of each individual entry contained in the report." KRE 803(6)(b) provides that "[n]o evidence in the form of an opinion is admissible under this subsection

---

11.  Ky., 954 S.W.2d 954 (1997).

12.  *Id.* at 957.

13.  *Id.* at 958. We note that the trial court admitted the DSS–150 form as a court exhibit after the Commonwealth's rebuttal examination of Botts, but before the defense cross-examined her. That cross-examination revealed that, while Botts may have access to records, she is not the custodian of records. This raises substantial questions regarding whether the witness could lay a foundation for the evidence.

unless such opinion would be admissible under Article VII of these Rules if the person whose opinion is recorded were to testify to the opinion directly." [14] In *Prater*, we specifically held that "[t]he recorded opinions and conclusions of social workers are not admissible," [15] and a social worker's "professional determination" that an allegation of abuse is "substantiated" is nothing more than improper opinion testimony. The testimony concerning information contained in the DSS–150 form did nothing more than put before the jury an unidentified social worker's written belief that appellant's father was *guilty* of abusing D.W. Under Article VII of the Kentucky Rules of Evidence, the social worker who prepared the DSS–150 form could not have testified to this conclusion. The trial court erred when it allowed the Commonwealth to introduce this opinion testimony through testimony concerning the contents of the DSS–150 form.

The Commonwealth argues that no reversible error occurred from the introduction of this evidence because: (1) the DSS–150 form itself was introduced as a court exhibit and not given to the jury; and (2) any error was harmless in light of other evidence introduced at trial. Given the fact that *on four (4) separate occasions* during the Commonwealth's cross-examination of defense witnesses and its rebuttal examination of Botts the jury was informed as to the *contents of that form*— the fact that the Department of Social Services had found D.W.'s previous allegation "substantiated"—the trial court's admission of the form itself as a court exhibit did nothing more than "close the barn door after the horse had done got out." Admitting the DSS–150 form as a court exhibit did nothing to erase the fact that the jury had already heard this improper evidence

*four times.* The Commonwealth cites no authority in support of its assertion that it was entitled to introduce this inadmissible hearsay opinion as "curative" evidence, and we can find none. The evidence in this case was largely a "swearing match" between D.W. and Appellant, evidence corroborating D.W.'s prior allegation of abuse bolstered D.W.'s credibility. Accordingly, we believe the erroneous introduction of this evidence prejudiced Appellant's substantial rights and requires reversal.

## IV. CONCLUSION

For the above reasons, we reverse Appellant's First–Degree Rape conviction and sentence of life imprisonment and remand Lewis Circuit Court Indictment No. 97–CR–0012 to the trial court for retrial in accordance with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent because I believe the admission of the document by the trial judge was harmless error. The document in question was introduced as an exhibit but was not shown to the jury because it was a collateral matter.

Jordan first elicited testimony that the victim had made false sexual abuse allegations against Jordan's father but there had never been any charges brought in that case. In rebuttal, a caseworker for Social Service who had worked on the case testified that a document was on file with the

---

**14.** KRE 803(6)(b).

**15.** *Prater v. Cabinet for Human Resources, supra* note 11 at 958.

Cabinet for Human Resources in which charges made by the victim against Jordan's father were substantiated.

Apparently, it was the defense theory of the case that the allegations were false. *Hall v. Commonwealth*, Ky.App., 956 S.W.2d 224 (1997), sets out a general rule that the admissibility of evidence of similar accusations made by the victim depends on whether they have been proven to be demonstrably false.

It is unfortunate that the evidence of the previous allegations came into evidence. However, it was Jordan who opened the door to the now claimed error when he elicited such testimony from three different witnesses. Jordan cannot now claim prejudice when the prosecution was simply trying to rebut evidence that arguably never should have been admitted into any proceeding. Any error in admitting the document into evidence was harmless. RCr 9.24.

I would affirm the conviction in all respects.