**Charles ENGLE, Executor of the Estate of Jeanette Jewell Rose, Deceased, Appellant/Cross–Appellee,**

v.

**BAPTIST HEALTHCARE SYSTEM, INC., d/b/a Baptist Regional Medical Center, Appellee/Cross–Appellant.**

Nos. 2009–CA–002170–MR, 2009–CA–00209–MR.

Court of Appeals of Kentucky.

Feb. 25, 2011.

Sara Beth Gregory, Thomas E. Carroll, Monticello, KY, for appellant/cross-appellee.

Charles D. Aaron, Jr., Lexington, KY, for appellee/cross-appellant.

Before DIXON and MOORE, Judges; ISAAC,[1] Senior Judge.

## OPINION

MOORE, Judge:

This matter involves an appeal and protective cross-appeal of a defense verdict in a medical negligence action regarding care and treatment provided to Jeanette Rose by Baptist Healthcare System, Inc., d/b/a Baptist Regional Medical Center (Baptist). After careful review, we reverse the defense verdict and remand this matter for a new trial.

## I. STATEMENT OF FACTS/PROCEDURAL HISTORY

On November 15, 2003, Rose was admitted to Baptist for surgery due to a broken

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute(s)(KRS) 21.580.

hip. Following her surgery, Rose became constipated and had bowel problems. Between November 27 and 29 of 2003, her large intestine ruptured. Dr. Chadwick Eustis ultimately removed part of Rose's large and small intestines. In late December, 2003, Rose was discharged from Baptist to a nursing home. She died on March 17, 2004, from septic shock.

Following these events, Charles Engle, in his capacity as the executor of Rose's estate, brought this medical negligence action against Baptist. He alleged that Baptist was negligent in failing to (1) properly assess Rose's condition; (2) continue to monitor Rose's condition; and (3) provide Rose with proper medications and treatment to prevent the development of her constipation.

This matter was tried before a jury from October 6 to October 9, 2009, with Engle and Baptist each presenting expert testimony. The jury returned a verdict in favor of Baptist. Engle appeals the verdict, and Baptist has filed a protective cross-appeal.

## II.  ANALYSIS

### A.  Engle's Appeal

The subject of Engle's appeal is the trial court's decision on an evidentiary matter, which we review under an abuse of discretion standard. *Welsh v. Galen of Virginia, Inc.*, 128 S.W.3d 41, 51 (Ky.App. 2001). The evidence in question is a twenty-four page report relating certain findings of the Cabinet for Health and Family Services, Department for Community Based Services (DCBS), resulting from a DCBS investigation of Engle's allegations concerning Baptist's care and treatment of Rose. Baptist moved to introduce this report as evidence in an effort to rebut Engle's allegation that Baptist was negligent in caring for Rose.

Contained in the report is a form labeled "DPP–115A," entitled "Notification of Protective Services Investigative Findings Adult Abuse, Neglect, or Exploitation." The DPP–115A form identifies Rose by name and contains DCBS's findings concerning whether a preponderance of evidence supported that Baptist's care and treatment of Rose qualified as "abuse, neglect, or exploitation as defined by KRS 209.020." Below that information, the result of DCBS's investigation indicates that a preponderance of evidence does not support that Baptist's care and treatment of Rose constituted abuse, neglect, or exploitation.

Also contained in this report is another DCBS document, thirteen pages long, entitled "Adult Narrative/Investigation/Assessment Form Mandatory on All Adult Protection and General Adult Referrals." The narrative is unsigned, but purports to reflect an investigation of this matter conducted by DCBS social worker Charlotte Jean Woodring. The narrative specifies that the focus of the DCBS investigation was "caretaker neglect," and identifies Engle's allegations of Baptist's neglect. It addresses a substantial amount of evidence introduced in this matter, including the circumstances surrounding Baptist's care for Rose, interviews with treating physicians, and other medical records. It also purports to contain several of Woodring's opinions and conclusions regarding the weight of that evidence. In particular, the narrative states that "[b]ased on medical records and interviews, caretaker neglect is unsubstantiated. All the facilities followed written physician's orders, no neglect was seen and Mrs. Rose's deteriorating condition is due to her multiple diagnoses and advanced age and not due to any caretaker neglect." It also states that no evidence of neglect exists.

Finally, the report contains a memorandum authored by "Anna Turpin, RN, NC/I."[2] It also purports to review several of the medical records at issue in this matter. The memorandum concludes by stating: "Based on the findings of this record review it appears the care and services were delivered in an appropriate and timely manner."

Immediately following Baptist's motion to introduce the DCBS report into evidence, Engle objected. The record reflects the substance of Engle's objection:

Baptist's counsel: Judge, just a second of your time so I don't have to do it at the end. I've got the report from the state you ruled was admissible under [Kentucky Rule(s) of Evidence (KRE)] 803(8)(b), and I'd like to move that into proof as Defendant's Exhibit 12 pursuant—pursuant to the self-authentication rule, KRE 902, domestic public documents.

Engle's counsel: Judge, I objected earlier, and I'd also object further because it's not relevant since it is a—an abuse/neglect standard that they are investigating, as opposed to a negligence standard that we are here today.

Baptist's counsel: I think neglect and negligence have the same root word. That's exactly what—

Engle's counsel: Well, neglect is almost—in that kind of situation is a criminal offense, and as we've adequately pointed out, this is not a criminal case.

Baptist's counsel: But investigated whether or not the care was appropriate is perfectly relevant. It's exactly on point.

Engle's counsel: I believe it says adult abuse, neglect, or exploitation investigation.

Baptist's counsel: Well, if you find the— the finding is, care and services were delivered in an appropriate and timely manner.

The Court: This isn't that thing you already gave me, right, this is something else?

Baptist's counsel: Yeah, this is the thing that—you remember a couple of days ago that [Engle's counsel] moved to exclude it off my witness list, and we agreed it was admissible under hearsay exception. Truthfully, we've already had this argument. This is just me putting it into proof now that you've ruled it's admissible, and I don't need a witness to do that under [KRE] 902(2) because it's self-authenticating.

The Court: Well, I don't remember, to be honest, but if we've already done it, then [Engle's counsel's] objection is noted.

Following this exchange, the trial court admitted the DCBS investigative report into evidence under KRE 803(8), the exception to the rule against hearsay evidence which generally applies to public records. Following the trial in this matter, the jury found in favor of Baptist.

On appeal, Engle claims to have raised, in the exchange cited above, the following objections regarding the DCBS report: (1) the DCBS report was hearsay evidence that was not exempted by KRE 803(8); (2) the DCBS report was irrelevant, per KRE 401, even if KRE 803(8) did exclude it from the general prohibition against hearsay evidence; and (3) even if the DCBS report was admissible hearsay and rele-

2. The memorandum describes Turpin as a "nurse consultant/inspector" for DCBS. Turpin's "RN" designation appears to qualify her as a registered nurse. Turpin did not testify in this matter.

vant, its probative value was outweighed by its prejudicial effect. Based upon these objections, Engle argues that the trial court abused its discretion in admitting the DCBS report into evidence.

Baptist, on the other hand, urges that there is no merit to Engle's objections and further contends that the above-cited exchange between their respective counsels only reflects that Engle objected to the DCBS report on the basis of relevance. Thus, Baptist contends that Engle failed to properly preserve his first and third objections for our review.

### 1. Engle properly preserved a hearsay objection to the admissibility of the DCBS report.

■ As to Baptist's argument that Engle failed to preserve his first objection for our review, we disagree. In relevant part, KRE 103 provides:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(1) Objection. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context.* . . .

(Emphasis added.)

The context of the exchange between Engle's counsel and Baptist's counsel, cited above, demonstrates that Engle effectively raised an objection to the admissibility of the DCBS report on the basis of hearsay. Baptist's counsel referenced a prior occasion where Engle had objected as to the report's admissibility, and Bap-

tist's counsel represented that the trial court had resolved the admissibility issue based upon its conclusion that a hearsay exception applied, *i.e.,* KRE 803(8)(b). From that context, the apparent basis of that prior objection necessarily included hearsay because, if the DCBS report was irrelevant, a hearsay exception, even if applicable, would not make it admissible. *See, e.g., Prater v. Cabinet for Human Res.,* 954 S.W.2d 954, 958 (Ky.1997) ("KRE 803(6) and KRE 803(8) only satisfy the hearsay aspects of the business or public record, itself. If a particular entry in the record would be inadmissible for another reason, it does not become admissible just because it is included in a business or public record.") While Engle may not have initially made this objection on the record, he apparently renewed this objection on the record at the start of this exchange, and the trial court apparently overruled it.

### 2. The DCBS report was hearsay, and KRE 803(8) did not exempt it from the rule against hearsay.

■ We have determined that Engle properly raised and preserved a hearsay objection to admitting the DCBS report into evidence. Furthermore, we agree with Engle's contention that the DCBS report was hearsay that was not admissible as evidence under KRE 803(8). In *Jordan v. Commonwealth,* 74 S.W.3d 263 (Ky.2002), the Supreme Court of Kentucky scrutinized an investigative report substantially similar to the DCBS report at issue in this matter, a report known as a "DSS–150." The DSS–150 was written by DCBS's predecessor agency, the Cabinet for Human Resources, Department for Social Services.[3] Similarly, the

3. The Cabinet for Human Resources was renamed the Cabinet for Families and Children. *See Thomas v. Cabinet for Families & Children,* 57 S.W.3d 262, 265 at n. 1 (Ky.2001). DCBS is a department within the Cabinet for Families and Children.

DSS–150 concerned an investigation of abuse, neglect, and dependency allegations; contained a social worker's nonjudicial determination that an allegation was "substantiated"; and the DSS–150 was presented as rebuttal evidence in a case involving similar facts, but a different standard of law (*i.e.*, it was presented by the Commonwealth as rebuttal evidence in a criminal rape trial). *Id.* at 267. After considering this report, the Supreme Court determined that the trial court abused its discretion by allowing it into evidence:

> [A]s this Court held in *Prater v. Cabinet for Human Resources,* [954 S.W.2d 954 (Ky.1997),] such records are hearsay that cannot be admitted as a public record or report under KRE 803(8), can only be admitted as a record of regularly conducted activity under KRE 803(6) if that provision's more stringent foundation requirements are met, and "even if a public agency's investigative report satisfies the foundation requirements of KRE 803(6), that does not authorize a carte blanche admission of each individual entry contained in the report." KRE 803(6)(b) provides that "[n]o evidence in the form of an opinion is admissible under this subsection unless such opinion would be admissible under Article VII of these Rules if the person whose opinion is recorded were to testify to the opinion directly." In *Prater,* we specifically held that "[t]he recorded opinions and conclusions of social workers are not admissible," and a social worker's "professional determination" that an allegation of abuse is "substantiated" is nothing more than improper opinion testimony. The testimony concerning information contained in the DSS–150 form did nothing more than put before the jury an unidentified social worker's written belief that appellant's father was *guilty* of abusing D.W. Under Article VII of the Kentucky Rules of Evidence, the social worker who prepared the DSS–150 form could not have testified to this conclusion. The trial court erred when it allowed the Commonwealth to introduce this opinion testimony through testimony concerning the contents of the DSS–150 form.

*Id.* at 268–69. (Internal footnotes omitted; emphasis theirs.)

In closing, the *Jordan* Court held that the introduction of this report prejudiced the appellant's substantial rights because it improperly bolstered the credibility of the witnesses against him. *Id.* at 269. The *Jordan* Court further determined that the trial court's decision to admit this report into evidence constituted error and grounds for a new trial. *Id.*

In light of *Jordan,* KRE 803(8) did not exempt the DCBS report at issue in this matter from the rule against hearsay. Thus, the trial court erred by allowing it into evidence under that exception.

Baptist makes no argument that any error resulting from the introduction of the DCBS report was harmless; nor, for that matter, do we find this error to be harmless. In *Jordan,* the Supreme Court held that this kind of report, entered into evidence without safeguards, did nothing more than put before the jury an unidentified social worker's written belief that a party committed abuse. *Id.*

Here, we find that the DCBS report, entered into evidence without the safeguards described in *Jordan,* did nothing more than put before the jury yet another social worker's, improperly admitted, written belief—that a preponderance of evidence does not support that Baptist deprived Rose of services necessary to maintain her health and welfare. *See* KRS 209.020(16). As Baptist's counsel pointed out during the discussion cited

above, this is nearly indistinguishable from stating an opinion that Baptist met the applicable standard of care in a negligence action. And, as *Jordan* holds, such an opinion improperly bolstered the credibility of Baptist's witnesses and undermined the credibility of any evidence to the contrary.

We need not address Engle's remaining objections. We believe the erroneous introduction of this evidence prejudiced Engle's substantial rights and mandates reversal and a new trial.

## B. Baptist's cross-appeal

■ Although Baptist received a defense verdict, it filed a cross-appeal regarding the trial court's instructing the jury on punitive damages. Engle's complaint, filed November 24, 2004, requested an unspecified amount of punitive damages. Baptist requested answers to interrogatories, and one of Baptist's interrogatories asked Engle to categorize and specify the amount of his damages. In his answer to Baptist's interrogatory, Engle made no reference to punitive damages.

The trial in this matter concluded on October 9, 2009. After the close of evidence at trial, but before the matter was submitted to the jury, Engle moved to supplement his answers to Baptist's interrogatories because he wished to specify a sum of punitive damages for the jury to consider. Baptist objected, contending that Kentucky Rule(s) of Civil Procedure (CR) 8.01(2) precluded Engle from supplementing his interrogatories at that time. In support, Baptist cited *Fratzke v. Murphy*, 12 S.W.3d 269 (Ky.1999), which "recognized that a trial court can authorize answers or supplemental answers to inter-

rogatories for good cause, as late as during the trial itself."[4] Baptist urged that Engle's motion was untimely because both sides had already finished presenting their cases. Nevertheless, the trial court granted Engle's motion to supplement his answers to Baptist's interrogatories, and the question of punitive damages was submitted to the jury.

In its cross-appeal, Baptist repeats its argument that Engle's motion was improper solely because it occurred after both sides had presented their respective cases. Baptist urges that, should we remand this matter, Engle should be precluded from seeking punitive damages upon retrial.

However, Baptist presents no authority supporting that a motion to supplement answers to interrogatories is improper within the meaning of *Fratzke* if it is made after the close of evidence but prior to submitting a matter to the jury. Moreover, *Fratzke* merely holds that a motion to supplement answers to interrogatories may be granted as late as during trial. We have determined that a new trial is warranted in this matter, the new trial in this matter has yet to occur, and Baptist presents no authority that would prohibit Engle from moving to supplement his answers during the course of retrial. Therefore, we find no error in the trial court's decision to grant Engle leave to amend his answers to Baptist's interrogatories.

## III. CONCLUSION

As to Engle's appeal, we reverse this matter and remand it to Whitley Circuit Court for retrial in accordance with this opinion. As to Baptist's cross-appeal regarding the trial court's decision to grant

---

**4.** In *Tennill v. Talai*, 277 S.W.3d 248, 251 (Ky.2009), the Supreme Court of Kentucky interpreted *Fratzke* in this manner.

Engle leave to supplement his interrogatory answers, we find no error and affirm.

ALL CONCUR.